# SATURN CONSTRUCTION COMPANY, INC. *v.* PREMIER ROOFING COMPANY, INC.
## (15386)

Callahan, Borden, Norcott, Katz and Palmer, Js.

Argued April 26—officially released July 30, 1996

*Louis R. Pepe*, with whom, on the brief, were *David E. Rosengren* and *Robert G. Dunn*, for the appellant (plaintiff).

*Raymond A. Garcia*, with whom, on the brief, was *Constantine G. Antipas*, for the appellee (defendant).

BORDEN, J. The principal issue in this appeal is whether an arbitration panel manifestly disregarded the law by awarding interest and attorney's fees to the defendant in its resolution of an unrestricted arbitration submission. The plaintiff, Saturn Construction Company, Inc., appeals from the judgment of the trial court denying its application to vacate, and granting the motion of the defendant, Premier Roofing Company, Inc., to confirm the arbitration award in its favor. The plaintiff claims that the trial court improperly confirmed the award for the following reasons: (1) the arbitration panel improperly denied the plaintiff's request to open the arbitration proceedings to review relevant and material new evidence; and (2) the arbitration panel manifestly disregarded the law by awarding interest and attorney's fees because the defendant had failed to comply with General Statutes § 49-41a et seq., the Prompt Pay Act.[1] We affirm the judgment of the trial court based, however, on different reasoning.

[1] General Statutes § 49-41a provides: "Enforcement of payment by general contractor to subcontractor and by subcontractor to his subcontractors. (a) When any public work is awarded by a contract for which a payment bond is required by section 49-41, the contract for the public work shall contain the following provisions: (1) A requirement that the general contractor, within thirty days after payment to the contractor by the state or a municipality, pay any amounts due any subcontractor, whether for labor performed or materials furnished, when the labor or materials have been included in a requisition submitted by the contractor and paid by the state or a municipality; (2) a requirement that the general contractor shall include in each of its subcontracts a provision requiring each subcontractor to pay any amounts due any of its subcontractors, whether for labor performed or materials furnished, within thirty days after such subcontractor receives a payment from the general contractor which encompasses labor or materials furnished by such subcontractor.

The arbitration panel reasonably could have found the following facts. The plaintiff, a general contractor on a state of Connecticut department of public works construction project known as the Western Connecticut Correctional Center (project), entered into a subcontract with the defendant, in which the defendant was responsible for the installation of the project's roofing system. On January 21, 1992, the defendant sent the plaintiff a letter, by certified mail, return receipt requested, in which the defendant demanded payment under the contract.[2] The plaintiff did not pay as

---

"(b) If payment is not made by the general contractor or any of its subcontractors in accordance with such requirements, the subcontractor shall set forth his claim against the general contractor and the subcontractor of a subcontractor shall set forth its claim against the subcontractor through notice by registered or certified mail. Ten days after the receipt of that notice, the general contractor shall be liable to its subcontractor, and the subcontractor shall be liable to its subcontractor, for interest on the amount due and owing at the rate of one per cent per month. In addition, the general contractor, upon written demand of its subcontractor, or the subcontractor, upon written demand of its subcontractor, shall be required to place funds in the amount of the claim, plus interest of one per cent, in an interest-bearing escrow account in a bank in this state, provided the general contractor or subcontractor may refuse to place the funds in escrow on the grounds that the subcontractor has not substantially performed the work according to the terms of his or its employment. In the event that such general contractor or subcontractor refuses to place such funds in escrow, and the party making a claim against it under this section is found to have substantially performed its work in accordance with the terms of its employment in any arbitration or litigation to determine the validity of such claim, then such general contractor or subcontractor shall pay the attorney's fees of such party.

"(c) No payment may be withheld from a subcontractor for work performed because of a dispute between the general contractor and another contractor or subcontractor.

"(d) This section shall not be construed to prohibit progress payments prior to final payment of the contract and is applicable to all subcontractors for material or labor whether they have contracted directly with the general contractor or with some other subcontractor on the work."

[2] The letter, which was signed by Stuart Grodd, the president of the defendant, provides in relevant part: "I am writing to attempt to clear up the dispute which now exists between Premier and Saturn over payments due Premier on our subcontract for the referenced project.

"During the course of the last three months, I and other members of my staff have tried to resolve our claim for money due under the subcontract. . . .

requested. Thereafter, in accordance with an arbitration clause contained in the contract, the defendant made a demand for arbitration to the American Arbitration Association.[3] The defendant claimed that the plaintiff had breached the contract by its failure to pay the amount due under the contract, and sought relief pursuant to § 49-41a and General Statutes § 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA), including, inter alia, the contract balance, interest and attorney's fees.[4] The plaintiff denied the allegation that it had breached the contract, and asserted two affirmative defenses and a counterclaim.[5]

The arbitration proceedings consisted of ten days of testimony, followed by the parties' simultaneous submission of posthearing briefs. Following the submission of briefs, but prior to the issuance of the award, the

"If you do not make payment by Friday, I will seek the entire amount outstanding, which is $303,400.00, together with interest and legal fees. . . .

"THIS LETTER IS INTENDED AS THE NOTICE REQUIRED BY CONN. GEN. STAT. § 49-42 (a), A COPY OF WHICH IS ENCLOSED."

[3] The arbitration clause provided: "Agreement to Arbitrate: Any dispute arising out of the awarding of the contract for this project by the Commissioner of Administrative Services, or performance thereunder, shall be submitted to arbitration under the rules of the American Arbitration Association. Hartford, Connecticut shall be the locale where the Arbitration is to be held." It is undisputed that this is an unrestricted submission, which provides the arbitration panel with unlimited authority to resolve all of the parties' claims and defenses. See *Garrity* v. *McCaskey*, 223 Conn. 1, 5-6, 612 A.2d 742 (1992).

[4] The demand for arbitration provided in relevant part:

"NATURE OF DISPUTE: Breach of Contract

"CLAIM OR RELIEF SOUGHT: (amount, if any)

"Monetary damages including but not limited to contract balance, change orders, retainage, plus interest and attorney's fees (pursuant to Conn. Gen. Stat. Sec. 49-41a, et seq.), and multiple/punitive damages (pursuant to Conn. Gen. Stat. Sec. 42-110a, et seq.)."

[5] The plaintiff asserted, as affirmative defenses, that the defendant had (1) breached the contract by failing to perform its obligations, and (2) failed to provide certain warranties, which was a condition precedent to the payment of the money claimed. In its counterclaim, the plaintiff sought to recover damages suffered as a result of the defendant's alleged failure to perform.

plaintiff moved to open the arbitration proceedings, claiming that it had discovered relevant and material new evidence. The arbitration panel denied the motion.

Subsequently, the arbitration panel awarded the defendant: (1) $303,400 for its breach of contract claim; (2) simple interest on the net amount of $292,500 from February 3, 1992, at the rate of 1 percent per month; and (3) $49,573.98 in legal fees. The arbitration panel awarded the plaintiff $10,900 on its counterclaim.

The plaintiff applied to the Superior Court, pursuant to General Statutes § 52-418,[6] to vacate the award claiming that the arbitration panel had engaged in misconduct by refusing to open the proceedings to hear pertinent and material evidence concerning the defendant's alleged failure to guarantee the security of the roofing system, and by awarding interest and attorney's fees pursuant to § 49-41a. The trial court denied the application and confirmed the award. The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

I

The plaintiff first claims that the trial court improperly denied its application to vacate the panel's award

[6] General Statutes § 52-418 provides in relevant part: "Vacating award. (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

pursuant to § 52-418 (a) (3) on the ground the arbitration panel improperly refused to open the proceedings to hear pertinent and material evidence. See *O & G/ O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 523 A.2d 1271 (1987). In support of its claim, the plaintiff argues that a letter it received from the defendant's supplier, Johns-Manville, following the conclusion of the hearings, in which the supplier stated that it would be unable to provide certain bonds for the roof, was a repudiation of a promise made by the defendant during the arbitration proceedings and was, therefore, evidence of critical importance requiring the arbitration panel to open the proceedings. Because we disagree with the plaintiff's assertion that the defendant had promised that either it or its supplier would provide the bonds and the fact that the panel considered this issue to be unresolved, the plaintiff may not prevail on this claim.

"We note, at the outset, that arbitrators are accorded substantial discretion in determining the admissibility of evidence, particularly in the case of an unrestricted submission, which 'relieve[s] the arbitrators of the obligation to follow strict rules of law and evidence in reaching their decision.' . . . Indeed, it is within the broad discretion of arbitrators to decide whether additional evidence is required or would merely prolong the proceedings unnecessarily. . . . This relaxation of strict evidentiary rules is both necessary and desirable because arbitration is an informal proceeding designed, in part, to avoid the complexities of litigation. Moreover, arbitrators generally are laypersons who bring to these proceedings their technical expertise and professional skills, but who are not expected to have extensive knowledge of substantive law or the subtleties of evidentiary rules." (Citations omitted.) Id., 148–49.

"To establish that an evidentiary ruling, or lack thereof, rises to the level of misconduct prohibited by

§ 52-418 (a) (3) requires more than a showing that an arbitrator committed an error of law. . . . Rather, a party challenging an arbitration award on the ground that the arbitrator refused to receive material evidence must prove that, by virtue of an evidentiary ruling, he was in fact deprived of a full and fair hearing before the arbitration panel." (Citations omitted.) Id., 149.

During the arbitration proceedings the plaintiff had claimed that a potential deterioration problem with the roofing system obligated the defendant, through its supplier, to provide certain additional bonds, which would indemnify the plaintiff to the state. The defendant argued, to the contrary, that it was not required to provide the bonds because the problem was a consequence of the state's specifications wherein the state architect, in order to save money, had eliminated the requirement that a plastic barrier be placed between two of the roof components and the removal of the barrier had resulted in an additional risk that the steel roof deck might corrode. The arbitration panel allowed each party to explore this issue at length.[7] Following

---

[7] The transcript of the arbitration proceeding provides in relevant part:

"Mr. Rice [arbitrator]: What is the status of the warranty at this point?

"Mr. Garcia [defendant's counsel]: The status of it is Manville is now talking to the state directly.

"Mr. Rice: So that's not changed since last time?

"Mr. Garcia: That's right.

"Mr. Rice: Has there been any resolution or ongoing discussions?

"Mr. Garcia: They're still talking. The state, our representation is the state is trying to get Manville to provide some security with the eventuality they may not be in the roofing business in twenty years.

"Mr. Geraci [plaintiff's in-house counsel]: The state wants a bond essentially backed by a surety company?

"Mr. Rice: In case Manville goes the way of the asbestos?

"Mr. Geraci: Absolutely.

"Mr. Donnellan [plaintiff's arbitration counsel]: Because there's some deterioration on the roof now, but they can live with it now. It's ridiculous to make them rip it off.

"Mr. Delaney [arbitrator]: How is that relevant to this situation?

"Mr. Donnellan: This is the whole issue with respect to what Saturn's justification is of withholding the money.

the conclusion of the hearings, the plaintiff learned that the defendant's supplier would be unable to provide the

"Mr. Rice: I mean the status of the negotiations with the state, how is it relevant?

"Mr. Donnellan: It's relevant to demonstrate it hasn't been resolved.

"Mr. Rice: Until we're told it's going to be resolved, we're going to assume that it hasn't been resolved.

"Mr. Donnellan: Well, then, what I'd like to do is get into evidence two recent letters that deal with the situation just so we can bring it up to that, and we can leave it at that.

"Mr. Delaney: Well, can we stipulate it is not resolved?

"Mr. Garcia: It is resolved from our point of view. Manville is attempting to alleviate the state's anxiety. It's our position the roof was resolved. It wasn't an issue until Mr. Cappelli decided he wanted to stiff—the state's man sat here and said they got two and a half percent on Premier's contract, and they haven't held a dime towards the roof, they're just using the situation to attempt to deal with an ambiguity that deals with the roof's situation. That's what the state's man said.

"Mr. Rice: I understand.

"Mr. Donnellan: I don't think that's an accurate statement.

"Mr. Rice: I don't care what it is. We heard it.

"Mr. Delaney: Let's get it on the record and let's put it away.

"Mr. Garcia: Now, from that point of view, whether it's, quote, 'resolved' isn't the issue; the question is whether what Premier provided conformed to the spec. And that only relates to two and a half percent, quite frankly. And you have the specifications, you have the warranties and the like in specimen form here, and that's as far as it needs to go.

"Mr. Delaney: Are you satisfied the record is clear on where everything stands?

"Mr. Donnellan: I'm not satisfied with what Mr. Garcia said, because I don't think that correctly states it.

"Mr. Delaney: Then state your position so it's on the record.

"Mr. Donnellan: With respect to what Premier provided, Premier Roofing supplied certain product, they got it from Johns-Manville, but they did the installation of the roof. That installation of the roof and the material that they used, all right, is attacking the metal decking and has caused deterioration in the metal decking. And there's been submitted into evidence an expert report evidencing the status of that deterioration in the roof at the time that that roof report was prepared.

"And what has been ongoing is rather than it turn it to Premier and say rip up the roof and do it over, which I believe would be their obligation to do if the deterioration was to such an extent as to attack the roof decking, and because the deterioration of the roof would take such a long period of time and might not reach the point where it would attack, actually attack the integrity of the roof, as a substitute, the state is willing to take some

requested bonds. Consequently, the plaintiff requested that the arbitration panel open the proceedings, claiming that the defendant had reneged on its promise to provide the bonds. The request was denied and, thereafter, the plaintiff applied to the trial court to vacate the award.

In its application to vacate, the plaintiff unsuccessfully renewed this claim. The plaintiff contended that at the conclusion of the hearings the parties had come to a mutual agreement on this issue, and that the defendant had represented that it would supply the requested

---

additional warranty or guaranty secured by a bond from Johns-Manville, because the roof might last for twenty years.

"We're saying Okay, we hear what you're saying, the roof might last for twenty years; but if it doesn't and our decking starts to rust and deteriorate, we want someone responsible for doing that. And Premier and Johns-Manville may not be around at that time. But the problem with the deck exists now. Rather than litigate over it now and make the claims, rather than the state make a claim against you and against Premier, let's remedy the situation.

"Mr. Delaney: I think your position is clear on the record and your position is clear on the record.

"Mr. Garcia: Our position is we did it the way the specification—

"Mr. Frazier [arbitrator]: It's on the record.

"Mr. Rice: We understand. We understand. We understand that the roof was constructed according to specs. There's no dispute.

"Mr. Delaney: I think the positions of both parties are clear. Do we have to pursue it any further? We've listened to a lot of testimony on this, you've both just summarized it, are you both satisfied we can put this portion of the case to bed?

"Mr. Garcia: Based on what Mr. Rice just said, you recognize the spec—the roof's in according to specification.

"Mr. Rice: Including the change spec. We understand the specification with respect to the roof. But the roof is constructed according to the original specs where applicable and according to the modified specs where applicable.

"Mr. Garcia: Right?

"Mr. Donnellan: That's correct. I think the difference lies on Mr. Garcia I guess feels that his job ends there.

"Mr. Rice: We're not going to characterize the legal ramifications of it. I just want to understand factually—

"Mr. Donnellan: The roof was done in accordance with the modified specs."

bonds. The plaintiff asserts the supplier's subsequent letter refusing to provide the bonds was a repudiation of the agreement, which necessitated that the arbitration panel open the hearings to hear new evidence. The trial court was unpersuaded. Noting that the arbitration panel had heard both party's arguments with regard to this issue, and presumably had considered all of the relevant evidence in denying the request to open the proceedings, the trial court stated that "the transcript of the proceedings before the arbiters reveals the position they took and their determination that the roof had been constructed in accordance with the applicable specification . . . and that they had considered the question of guarantees in their decision to go forward and ultimately in the framing of the award." The trial court concluded, therefore, that the panel had not improperly refused to hear evidence concerning the bonds. This appeal followed.

The plaintiff claims that the trial court's conclusion that the arbitration panel had fully considered the bond issue is a logical impossibility because the repudiation of the alleged promise did not occur until after the conclusion of the arbitration hearings. The plaintiff relies on the defendant's representations during the hearings that the bond issue was "resolved from our point of view," that "Manville [was] attempting to alleviate the state's anxiety," and that the state and Manville were continuing to discuss the issue, as evidence of a mutual agreement reached during the hearings that the defendant would supply the requested bonds. We conclude that this contention is without merit.

Upon careful review of the defendant's statements in the context of the entire colloquy before the arbitration panel, it is clear that the defendant consistently maintained that it was not obligated to provide the requested bonds because any deterioration problem had resulted from the state's specifications, with which the defend-

ant had fully complied and at which time its obligation to the plaintiff and to the state had ceased. See footnote 7. Although it is true that the defendant asserted that the state and the supplier were presently engaged in negotiations and that the supplier was attempting to "alleviate the state's anxiety," we do not read those assertions as an unequivocal promise that the ultimate resolution of the negotiations would be in the plaintiff's favor. Because the record reveals that at the close of the hearings the arbitration panel considered this issue to be unresolved,[8] the subsequent letter from the supplier to the plaintiff was merely the resolution of an issue that the arbitration panel had not relied on in making its award. The only logical inference, therefore, is that the ultimate resolution was irrelevant to the award and that, as such, the arbitration panel's refusal to open the proceedings did not deprive the plaintiff of a full and fair hearing.

## II

The plaintiff next claims that the trial court improperly concluded that the arbitration panel did not manifestly disregard the law by awarding the defendant interest and attorney's fees pursuant to § 49-41a, because the defendant had failed to comply with the requirements set forth in the statute.[9] See *Garrity* v. *McCaskey*, 223 Conn. 1, 10, 612 A.2d 742 (1992). We are not persuaded.

Our analysis is guided by well established principles of law regarding a party's application to vacate a consensual arbitration award resulting from an unrestricted submission. "When the parties agree to arbitration and establish the authority of the arbitrator through the

[8] One of the arbitrators stated: "Until we're told it's going to be resolved, we are going to assume it hasn't been resolved."

[9] Because § 49-41a (b) sets forth different requirements for interest and attorney's fees, we will address each form of relief separately. See footnote 1.

terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." (Citations omitted.) *Garrity* v. *McCaskey*, supra, 223 Conn. 4–5.

"Such a limited scope of judicial review is warranted given the fact that the parties voluntarily bargained for the decision of the arbitrator and, as such, the parties are presumed to have assumed the risks of and waived objections to that decision. . . . It is clear that a party cannot object to an award which accomplishes precisely what the arbitrators were authorized to do merely because that party dislikes the results. . . . Thus, we have previously held that the parties should be bound by a decision that they contracted and bargained for, even if it is regarded as unwise or wrong on the merits." (Citations omitted.) *American Universal Ins. Co. v. Delgreco*, 205 Conn. 178, 186–87, 530 A.2d 171 (1987).

"[A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator has 'exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.' We emphasize, however, that the 'manifest disregard of the law' ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles.

"So delimited, the principle of vacating an award because of a manifest disregard of the law is an important safeguard of the integrity of alternate dispute resolution mechanisms. Judicial approval of arbitration decisions that so egregiously depart from established law that they border on the irrational would undermine society's confidence in the legitimacy of the arbitration process. . . . Furthermore, although the discretion conferred on the arbitrator by the contracting parties is exceedingly broad, modern contract principles of good faith and fair dealing recognize that even contractual discretion must be exercised for purposes reasonably within the contemplation of the contracting parties." (Citations omitted.) *Garrity* v. *McCaskey,* supra, 223 Conn. 10–11.

In *Garrity,* we adopted the test enunciated by the United States Court of Appeals for the Second Circuit in interpreting the federal equivalent of § 52-418 (a) (4). Id., 8, citing *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Bobker,* 808 F.2d 930, 933–34 (2d Cir. 1986). The test consists of the following three elements, all of which must be satisfied in order for a court to vacate an arbitration award on the ground that the arbitration panel manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitration panel appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is well defined, explicit, and clearly applicable. Id., 9.

## A

The plaintiff claims that the arbitration panel manifestly disregarded the law by awarding the defendant interest pursuant to § 49-41a because the defendant

failed to comply with the statutory notice requirement.[10] In that connection, the plaintiff argues that the defendant did not provide adequate notice of its claim, as required by § 49-41a, because the January 21, 1992 letter did not specifically invoke § 49-41a and was only intended to serve as notice under General Statutes § 49-42 (a), the Payment Bond Claim Act.[11] The defendant argues, to the contrary, that the January 21, 1992 letter satisfied the statutory notice requirement and that, therefore, it was entitled to an award of interest under § 49-41a. In addition, the defendant argues that, even if the arbitration panel's determination that the letter was adequate notice under the statute was a misinterpretation of the law, it was not a manifest disregard of the law and, therefore, did not warrant vacating the interest award. We agree with the defendant.

[10] At oral argument, the defendant conceded that the interest award was made pursuant to § 49-41a (b), in light of the fact that it was awarded at a rate of 1 percent per month and was effective ten days after the plaintiff's receipt of the January 21, 1992 letter, both of which are provided for in § 49-41a. Moreover, in its posthearing brief, the defendant had argued that the only issue with regard to an award of interest was whether the arbitration panel would award interest at 1 percent per month pursuant to § 49-41a (b), or interest at the legal rate of 10 percent per year pursuant to General Statutes § 37-3a, which provides in relevant part: "Rate recoverable as damages. . . . [I]nterest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909 . . . ."

[11] The plaintiff contends that because the letter was addressed to both the plaintiff and its surety, and that therein the defendant stated its intention to proceed against the surety pursuant to § 49-42 and expressly invoked that statute, the letter was intended to serve as notice under § 49-42, and nothing more. The plaintiff cites our decision in *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.*, 207 Conn. 468, 542 A.2d 692 (1988), in support of its argument that the January 21, 1992 letter may not serve the dual purpose of providing notice under both statutes. We are unpersuaded.

In *Nor'easter Group, Inc.*, we held that notice under § 49-41a (b) was not a jurisdictional prerequisite to commencing an action under § 49-42. Id., 482. Our decision was based, in part, on the fact that the two statutes were intended "to accomplish separate and distinct ends and to afford separate and distinct remedies to subcontractors." Id., 477. We did not, however, conclude that a subcontractor could not satisfy the notice requirements of both statutes in the same letter.

The relevant portion of § 49-41a (b) provides that "the subcontractor shall set forth his claim against the general contractor . . . through notice by registered or certified mail. Ten days after the receipt of that notice, the general contractor shall be liable to its subcontractor . . . for interest on the amount due and owing at the rate of one per cent per month." On January 21, 1992, the defendant sent the plaintiff a letter, by certified mail, which provided in part: "I am writing to attempt to clear up the dispute which now exists between Premier and Saturn over payments due Premier on our subcontract for the referenced project. . . . If I do not receive payment of $283,400.00 by close of business Friday, January 25, 1992, I have instructed my attorney, Raymond Garcia, to institute arbitration against Saturn and proceed as appropriate against the bonding company, consistent with Conn. Gen. Stat. 49-42 (a). . . . If you do not make payment by Friday, I will seek the entire amount outstanding, which is $303,400.00, together with interest and legal fees. . . ."

Applying the test set forth in *Garrity* to the present case, we are unable to conclude that the notice requirements of § 49-41a, alleged to have been ignored by the arbitration panel, were "well defined, explicit, and clearly applicable." *Garrity* v. *McCaskey*, supra, 223 Conn. 9. First, the parameters of the notice requirements of § 49-41a have never been addressed by this court or the Appellate Court. Second, the statute directs only that "the subcontractor shall set forth [its] claim against the general contractor," and is lacking any requirement that the subcontractor expressly invoke the statute. Thus, the language of § 49-41a does not expressly compel the interpretation proffered by the plaintiff. Finally, the January 21, 1992 letter unquestionably provided the plaintiff with actual notice of the defendant's intent to institute arbitration proceedings and seek the contract balance, interest and attorney's

fees, if the plaintiff did not comply with the defendant's demand for money due under the contract. A determination that actual notice is sufficient to satisfy § 49-41a is a reasonable interpretation of the statute. A party's mere disagreement with the panel's interpretation and application of established legal principles is "a far cry from the egregious or patently irrational misperformance of duty that must be shown in order to prove a manifest disregard of the law under § 52-418 (a) (4). Acceptance of [this] argument would turn every disagreement with arbitrators' rulings of law into an allegation of manifest disregard of the law. We have never construed § 52-418 (a) (4) so broadly and we decline to do so today." Id., 13. The manifest disregard of the law doctrine "is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles." Id., 10. Thus, we conclude that the arbitration panel's award of interest pursuant to § 49-41a and, by necessary implication, its determination that the January 21, 1992 letter satisfied the statutory notice requirement, was not a manifest disregard of the law.[12]

Moreover, even if we were to conclude that the interpretation of § 49-41a proffered by the plaintiff was well defined, explicit and clearly applicable, we could not conclude, pursuant to the *Garrity* test, that the arbitration panel appreciated but ignored it. There is no evidence in the record that the plaintiff ever made this argument before the arbitration panel. In fact, in its posthearing brief, the plaintiff did not claim that the January 21, 1992 letter was inadequate notice to trigger

---

[12] We note that we need not decide whether the arbitration panel's interpretation of § 49-41a (b) was legally correct. See *Garrity* v. *McCaskey*, supra, 223 Conn. 8, citing *Wilko* v. *Swan*, 346 U.S. 427, 436–37, 74 S. Ct. 182, 98 L. Ed. 168 (1953) (arbitration panel's interpretation of law under unrestricted submission not subject to judicial review for error in interpretation). We need only decide in effect that, even if incorrect, it was not manifestly so within the parameters of *Garrity*.

the § 49-41a (b) *interest* provision. Rather, this issue was raised for the first time in the plaintiff's application to the trial court.[13] Accordingly, we affirm the trial court's judgment with regard to the award of interest.

B

The plaintiff next claims that the arbitration panel manifestly disregarded the law by awarding the defendant attorney's fees pursuant to § 49-41a (b) because the defendant had failed to comply with the statutory requirement to demand, in writing, that the general contractor place funds in the amount of the claim, plus interest of 1 percent, in an interest-bearing escrow account. The plaintiff further contends that even if the arbitration panel properly had concluded that the defendant satisfied the requirements of § 49-41a (b) with regard to an award of attorney's fees, the arbitration panel manifestly disregarded the law by failing to limit the award to the fees incurred in the prosecution of the defendant's claim, as opposed to the fees incurred in its defense of the plaintiff's counterclaims. See *Ernst Steel Corp.* v. *Reliance Ins. Co.*, 13 Conn. App. 253, 262, 536 A.2d 969 (1988). Because we conclude that the arbitration panel could have awarded attorney's fees pursuant to CUTPA, we need not address the plaintiff's claims.

When the scope of an arbitration submission is unrestricted, a resulting award is not subject to de novo review, even for errors of law, so long as the award conforms to the submission. *Garrity* v. *McCaskey*, supra, 223 Conn. 5. In the present case, the submission was broad and unrestricted, which provided the arbitration panel with the authority to decide all claims between the parties. In its demand for arbitration, the

---

[13] In its posthearing brief to the arbitration panel, the plaintiff's claim that the defendant had failed to comply with § 49-41a (b) was limited to the defendant's claim for legal fees.

defendant alleged that the plaintiff had breached the contract and sought relief pursuant to both the Prompt Pay Act and CUTPA. In its posthearing brief, the defendant argued that in addition to an award of attorney's fees pursuant to § 49-41a (b), "[t]he absolute corrupt nature of the defenses asserted here by [the plaintiff] also provide the panel the right to award legal fees as punitive damages. This panel can find that [the plaintiff's] refusal to pay was without any foundation in fact or law and amounts to malicious disregard of [the defendant's] rights. The arbitration demand language is sufficient to support such an award and in Connecticut punitive damages are limited to legal fees in a case such as this." Before the trial court and again in its appeal to this court, the defendant renewed its claim that the arbitration panel could have awarded legal fees pursuant to CUTPA.

Furthermore, the defendant alleged facts that, if true, would support a finding of liability under CUTPA without contravening the rule set forth in *Garrity*. Specifically, the defendant contended that the plaintiff had refused to pay money due under the contract without foundation and had asserted a frivolous counterclaim. " 'It is well settled that in determining whether [an act or] practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when [an act or] practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen]. . . .

" 'All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy.' " (Citations omitted.) *Jacobs* v. *Healey Ford-Subaru, Inc.*, 231 Conn. 707, 725–26, 652 A.2d 496 (1995).

" '[T]he plaintiff who establishes CUTPA liability has access to a remedy far more comprehensive than the simple damages recoverable under common law.' . . . This remedy is not limited to mere compensatory damages. . . . *Rather, under CUTPA, a plaintiff is entitled to have the trial court consider awarding both punitive damages; General Statutes § 42-110g (a); and attorney's fees. General Statutes § 42-110g (d) . . . .*" (Citations omitted; emphasis added.) *Larsen Chelsey Realty Co.* v. *Larsen*, 232 Conn. 480, 509–10, 656 A.2d 1009 (1995).

In light of the defendant's claim for relief in its demand for arbitration and the factual allegations regarding the plaintiff's conduct, we conclude that the arbitration panel's award of attorney's fees could have been made pursuant to the defendant's CUTPA claim. Thus, the resulting award was within the scope of the submission. It is unnecessary, therefore, for us to determine whether the arbitration panel manifestly disregarded the statutory requirements of § 49-41a (b), with regard to attorney's fees.

The plaintiff contends, nonetheless, that attorney's fees must have been awarded pursuant to § 49-41a, rather than CUTPA, because it is undisputed that the interest award was made pursuant to § 49-41a, and because there was no other basis on which they could have been awarded. The fact that interest was awarded

pursuant to § 49-41a, however, does not compel the conclusion that the attorney's fees were also awarded on that basis. Furthermore, as demonstrated by the assertions in the defendant's demand for arbitration, the plaintiff's argument that there was no other basis on which attorney's fees could have been awarded is without merit.

The plaintiff also argues that the defendant had abandoned its CUTPA claim, as evidenced by the defendant's posthearing brief in which its claim for attorney's fees was based on § 49-41a, rather than on CUTPA, which the defendant failed to cite.[14] On the basis of the defendant's claim for relief, the arguments made in its posthearing brief, which did not limit the claim for attorney's fees to § 49-41a, and the absence of any indication that the arbitration panel considered the defendant's CUTPA claim to be abandoned, however, the plaintiff may not prevail on this argument.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[14] In its reply brief in this court, the plaintiff claims, for the first time, that even if the defendant had pursued its CUTPA claim, any award of attorney's fees on that basis would be invalid because arbitrators are not authorized, under CUTPA, to award attorney's fees. In support of this contention, the plaintiff relies on *Success Centers, Inc.* v. *Huntington Learning Centers, Inc.*, 223 Conn. 761, 763, 613 A.2d 1320 (1992), and *Chrysler Corp.* v. *Maiocco*, 209 Conn. 579, 593, 552 A.2d 1207 (1989). It is a well established principle, however, that arguments cannot be raised for the first time in a reply brief. *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 593 n.26, 657 A.2d 212 (1995); *Scinto* v. *Stamm*, 224 Conn. 524, 528 n.5, 620 A.2d 99, cert. denied, 510 U.S. 861, 114 S. Ct 176, 126 L. Ed. 2d 136 (1993). We decline, therefore, to consider this claim.