[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
STATEMENT OF THE CASE
On September 23, 1996, the City of Bridgeport (the "plaintiff") filed an application to vacate the arbitration award made by the State Board of Mediation and Arbitration ("SBMA") giving William Chase (the "grievant"), a former member of the City of Bridgeport Police Department, pension benefits at a Detective pay status. On September 9, 1996, the defendant, Bridgeport, Connecticut Police Department Employee Local 1159, AFSCME, AFL-CIO, filed an answer and special defenses as well as a counter-application to confirm the arbitration award. The parties have filed memoranda supporting their positions, and the matter is ready for disposition. The following facts are relevant to the resolution of this issue.
The grievant was a special services officer for the plaintiff and worked in conjunction with state and federal authorities to infiltrate gangs and racketeering operations. When his identity became known to individuals he was investigating, the grievant became fearful for his life and was subsequently relocated outside of Connecticut. At the time of his relocation, the grievant held the rank of police officer and was a named plaintiff in a civil action against the plaintiff concerning irregularities with the detective promotional list. Prior to grievant's relocation, the Police Chief told him that he would receive a detective's pension if the civil action was successful. In July, 1992, the court ruled in favor of the plaintiffs in the pending civil action and ordered that the city certify the promotional list which contained the grievant's name.
After being relocated from the state, the grievant was granted a police officer's pension by the Board of Police Commissioners. The grievant was informed by his attorney that in order to receive a detective's pension, he would have to return to Bridgeport and pursue an action before the Board of Police Commissioners or the court. Due to death threats, the grievant was unable to return to Bridgeport and pursue any further action.
Subsequently, the defendant, Council 15, AFSCME, Local 1159, (the defendant) filed a grievance with the SBMA pursuant to an arbitration clause in the pension agreement. (Defendant's Brief, p. 2). At the arbitration hearing, the plaintiff raised the issue CT Page 11626 of arbitrability. At the conclusion of the parties' arguments, the SBMA ruled that the hearing should proceed on the merits and that the issue of arbitrability would be decided after the parties had an opportunity to file briefs concerning their claims. The plaintiff objected to the hearing going forward on the merits and offered no testimony concerning the grievant's claim.[1]
The SBMA found that the matter was arbitrable and sustained the grievance. The SBMA decided that the grievant was entitled to a detective's pension under the principles of equitable estoppel. The SBMA found that "[i]n the instant case, the Grievant justifiably relied upon the statements made by the Chief of police informing him he would receive Detective pension benefits if the Court action was successful." Thereafter, the SBMA made the following award: "The Grievant shall be entitled to Detective pay status for his pension benefits retroactive to his retirement date."
DISCUSSION
The plaintiff moves to vacate the award on the ground that SBMA exceeded or imperfectly executed its powers in such a manner that a mutual, final and definite award upon the subject matter has not been made.[2] It maintains that the award was in manifest disregard of the law because, contrary to the rationale of the SBMA, equitable estoppel cannot serve to create a municipal pension contract that is not executed in compliance with mandatory conditions prescribed in the charter or statutes.[3] According to the pension agreement, the pension board has the exclusive authority to administer the pension plan. Moreover, the pension agreement does not authorize the Police Chief to grant or deny pensions. In reply the defendant argues that the "manifest disregard" standard is reserved for those rare instances where arbitrators have consciously and blatantly ignored legal principles that are beyond dispute.
It is well established that "[w]hen the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of [the court's] judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted,[4] the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . ." (Internal quotation marks omitted.) SaturnCT Page 11627Construction Company, Inc. v. Premier Roofing Company, Inc.,238 Conn. 293, 303-04, 680 A.2d 1274 (1996). "Such a limited scope of judicial review is warranted given the fact that the parties voluntarily bargained for the decision of the arbitrator and, as such, the parties are presumed to have assumed the risks of and waived objections to that decision. . . . It is clear that a party cannot object to an award which accomplishes precisely what the arbitrators were authorized to do merely because that party dislikes the results. . . . Thus, [the Supreme Court has] . . . held that the parties should be bound by a decision that they contracted and bargained for, even if it is regarded as unwise or wrong on the merits." (Internal quotation marks omitted.) Id., 304.
"[A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to [General Statutes] § 52-418 (a)(4) because the arbitrator has `exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.'" (Internal quotation marks omitted.) Id. The Supreme Court emphasized, however, "that the `manifest disregard of the law' ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles." Id.
The plaintiff claims that the SBMA manifestly disregarded the law by awarding the grievant a Detective's pension because (a) the police chief is not authorized under the pension agreement to grant or deny pensions, and (b) estoppel cannot create entitlements to municipal pension benefits in the absence of some act by the entity authorized to grant a pension. Section 11 of the pension agreement provides: "The management and administration of the pension plan and the pension fund are hereby vested in the Bridgeport Police Department Pension Board (Pension Board)." "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." (Internal quotation marks omitted.) 24 Leggett Street LimitedParts. v. Beacon Industries, Inc., 239 Conn. 284, 295,685 A.2d 305 (1996). Here, the language of the pension agreement is clear and unambiguous. It states that the Pension Board will manage and administer the pension fund. The pension agreement does not authorize the police chief to decide what pension a member of the CT Page 11628 police department should receive, and the SBMA did not decide the issue of the grievant's pension based on the terms of the pension agreement. Instead, the SBMA's decision was grounded on the principle of promissory estoppel.
The court agrees with the plaintiff that promissory estoppel can only be asserted against a municipality under limited circumstances, and the SBMA may have committed legal error to rely on this doctrine rather than on any authorized action of the Pension Board. See Pineman v. Oechslin, 195 Conn. 405, 415,488 A.2d 803 (1985) ("The promissory estoppel approach, in focusing attention on the reasonable expectations of the employee, ignores the distinction traditionally made between private and public entities in determining the existence of contractual rights and obligations. . . . [c]ourts have consistently refused to give effect to government fostered expectations that, had they arisen in the private sector, might well have formed the basis of a contract or an estoppel."); see also Fennell v. City of Hartford,238 Conn. 809, 813, 681 A.2d 934 (1996) ("The officer, body or board duly authorized must act [on] behalf of the municipality, otherwise a valid contract cannot be created. Generally the power to make contracts on behalf of the municipality rests in the council or governing body. . . . Generally, no officer or board other than the common council, has power to bind the municipal corporation by contract, unless duly empowered by statute, the charter, or authority conferred by the common council, where the latter may so delegate its powers. . . .")
However, arbitration decisions may not be vacated solely because of errors of law; Saturn Construction Company, Inc. v.Premier Roofing Company, Inc., supra, 238 Conn. 304; and thus the controlling question is whether the award was in "manifest disregard of the law." Our Supreme Court in Garrity v. McCaskey,
supra, enunciated the following test for determining whether an arbitration panel manifestly disregards the law within the meaning of § 52-418 (a)(4): (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitration panel appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is well defined, explicit, and clearly applicable." Id. at 223 Conn. 4.
Assuming arguendo that the third prong of the Garrity test is met and the SBMA's decision ignored the applicable law concerning CT Page 11629 municipal estoppel, the plaintiff has still failed to satisfy the remaining two elements. During the arbitration hearing, the plaintiff never contested the merits of whether the grievant was entitled to a detective's pension on the merits. Moreover, the plaintiff has not claimed that the SBMA was made aware of the law that estoppel could not be used to give effect to the reasonable expectations of a public employee that might arise from the conduct of the government, even though such conduct by a private employer may be used to create estoppel. Pineman v. Oechslin,
supra, 195 Conn. 415.
Given the legal distinction between municipalities and the private sector in estoppel law, the error at issue was neither obvious nor capable of being readily perceived by the average person qualified to serve as an arbitrator. Moreover, in light of the plaintiff's failure to inform the SBMA regarding the law in question, the plaintiff has not shown that the arbitrators were even aware of this law much less that they knowingly ignored it. Cf. Saturn Construction Co. v. Premier Roofing Co., supra,238 Conn. 308-09 (even if the court could conclude that legal principle is well-defined and applicable, it could not conclude that the panel appreciated but ignored the law where the issue was raised for the first time in plaintiff's application to the trial court). All three elements of the Garrity test must be satisfied "in order for a court to vacate an arbitration award on the ground that the arbitration panel manifestly disregarded the law. . . ." Id., 305. Since the plaintiff has failed to satisfy all three elements of the Garrity test, the plaintiff's application to vacate the award must fail.
CONCLUSION
Therefore, for all the foregoing reasons, the plaintiff's application to vacate the arbitration award is denied, and the defendant's counter-application to confirm the arbitration award is granted.
Dated this 31st day of October, 1997.
Stevens, J.