[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. Procedural Background
This vigorously contested case was initiated by writ and complaint dated December 8, 2000, in which the plaintiff in a five-count complaint raises various legal issues relating to the construction of a residence for the plaintiff by the defendant, A. DeRoy Sons General Contractor, Inc. (hereinafter defendant or builder). The defendant, by answer, special defense and counterclaim of January 23, 2001, put in issue the claims of the plaintiff and alleged various special defenses relating to the contract between the parties and, by way of counterclaim (in three counts), alleged an entitlement to additional payment from the plaintiff for labor and materials provided in the construction of the residence.
After various amendments and other pleadings, the case was claimed for a trial which was held in this court on August 23, 2001 and on various subsequent dates. The parties thereafter filed briefs including their respective claims for findings of facts and conclusions of law on September 13, 2001. CT Page 13539
At the trial, both parties were ably represented by competent counsel, who presented testimony of witnesses and numerous exhibits in support of their respective claims.
II. Findings of Fact
The court, after hearing the evidence, evaluating the credibility of the witness, reviewing the exhibits and memoranda filed by the parties, finds the following facts have been proven by a preponderance of the evidence.
The plaintiff, Josephine York, at some time prior to September 19, 1997, was interested in having a house constructed on a vacant lot that she owned. She made several inquiries of different builders in an effort to select the builder appropriate to construct her home. She spoke with a representative of the defendant and viewed some of the other 100 houses previously constructed by the defendant builder during that process. Eventually, on September 19, 1997, the plaintiff, prior to departing for Florida (which was her usual practice during the winter months), met with the defendant's representative to finalize arrangements for the construction of a house on the lot at 4 Applewood Drive, Quaker Hill, Connecticut. Those discussions resulted in a contract between the parties dated September 19, 1997 (Plaintiff's Exhibit 3) a $40,000 deposit was paid. That contract, included an attached exhibit or "spec sheet" which listed some of the choices the plaintiff made in connection with the house to be constructed. Neither party paid careful attention to the contracting details and, therefore, left unspecified many of the areas around which issues have developed in this litigation. The contract contained many blanks and provisions which were clearly inapplicable to the circumstances. No mortgage was involved since the plaintiff was paying from available funds. No plans were provided by the plaintiff for the defendant to follow although the plaintiff had some plans which were provided by another contractor. Eventually, the builder had plans developed by Albert Watrous on or about October 6, 1997 (Defendant's Exhibit H). Various plot plans were prepared by surveyors laying out the proposed house on the plaintiff's lot (Defendant's Exhibits J and K). Because of the size and shape of the lot special considerations were required in laying out the house on the lot.
The contract provided for a total price for the construction of the residence of $171,000 but made no provision was made for periodic payments prior to the completion of the house. There was a specific provision that suggested the possibility of additions and deductions to the price based upon subsequent agreements in writing. No such agreements in writing were offered into evidence although both parties are claiming additions and deductions to the contract price. Many of the more CT Page 13540 significant claims of the plaintiff arose out of claimed verbal requests during the contract discussions. The contract called for a completion date on April 15, 1998 but indicated the builder would not be penalized for delays beyond its control. The contract did not contain a provision that time was of the essence. The plaintiff, however, was interested in the completion date because it was the normal time when she returned from her winter in Florida. Also the plaintiff, in reliance of the expectation of a completions date of April 15, put her alternative residence on the market and sold the same during the winter with a closing eventually having been scheduled for April 30, 1998.
While the plaintiff was in Florida for the winter, she asked a friend, William Scacciaferro (hereinafter agent), to look in on the construction project on her behalf. The agent was physically present on the building site from time to time during the construction of the house and from time to time reported to the plaintiff by telephone with regard to the same. The agent's directions with regard to the construction project were followed by the defendant and, with his wife, he selected some of the carpeting and tile for the house during the construction period prior to the return of the plaintiff from Florida. The plaintiff returned to Connecticut on or about March 23, 1998. The closing on the sale of her condominium was held on April 30, 1998. The plaintiff moved into the new house at 4 Applewood Drive, Quaker Hill, Connecticut on April 27, 1998 while there remained some flooring and plumbing work to be completed. The building official of the Town of Waterford authorized the plaintiff to take possession at said time although a Certificate of Occupancy was not issued until May 10, 1998. The construction was substantially completed at the time the plaintiff moved in which is found to have been a reasonable time after the contract completion date. At the time of the granting of the Certificate of Occupancy, the defendant requested payment for the balance of the contract. Some of the delay in the completion of the house was the result of changes or additions requested by the plaintiff or her agent. The plaintiff alleging that there remained items to be corrected declined to make further payment. At that time, the relationship between the plaintiff and the defendant deteriorated to a point where the parties were barely on speaking terms and the defendant never was asked to return to the property. The plaintiff thereafter engaged several other contractors to make repairs, adjustments or improvements to the property. During the time of construction, at the request of the plaintiff or her agent, the defendant made several changes in the understanding of the parties with respect to the construction of the house which will be hereinafter referred to. The configuration of the lot and the size of the house desired by the plaintiff required by the builder to incur extra expenses and delays for surveying to comply to the requirements of the building official of the Town of Waterford. The building official of the Town of Waterford provided instructions to the CT Page 13541 defendant with regard to proposed drainage contemplated by the defendant in connection with the construction project. During the construction of the house, at the request of the defendant, the plaintiff sent from Florida several payments as set forth in Plaintiff's Exhibit 39 the last one being on April 2, 1998. The parties have stipulated that there remains the amount of $18,200.00 of the original contract price which is unpaid subject to adjustments.
The parties have made various claims with regard to additional funds due to them arising out of claimed upgrades, adjustments, additions or corrective work required.
In addition, the parties disagree as to what "credits" are due the plaintiff (i.e., reductions in the purchase price) due to the plaintiff's purchase of items normally included in the price of a house. In some cases "credits" were provided for in the exhibit attached to the contract and others were not. These have been variously described in the testimony and/or exhibits including Plaintiff's Exhibit 40 (with handwriting on the back of page 3) and Plaintiff's Exhibit 41 a so-called trial brief as well as itemized in the final briefs of the parties. The plaintiff has introduced numerous photographs with the regard to the conditions of the property at various times and locations together with exhibits reflecting claims relating to work done by others in the alleged completion of the contract. The defendant has also introduced numerous exhibits with regard to deviations from the contract, modifications, extras and changes. As indicated above, no written change orders or written instructions were exchanged between the parties during the course of the construction. The testimony of the parties differed substantially as to the terms which were "oral" relating to their contract.
III. Conclusions of Law
With regard to the implied warranties claims under § 47-118 of the Connecticut General Statutes, the court finds that the plaintiff has not proven by a preponderance of the evidence that the new home which she had constructed by the defendant violated any of the statutory implied warranties. Specifically, the court finds that the home constructed by the defendant for the plaintiff was free from faulty materials, constructed according to sound engineering standards, constructed in a workman like manner and fit for habitation at the time of the delivery of the property and occupation of the same by the plaintiff.
The Connecticut Unfair Trade Practices Act (C.G.S. §§ 42-110a,42-110g) is the basis for the claims in the fifth count of the plaintiff's complaint. The plaintiff in its memorandum has set forth the law dealing with that subject (pp. 17 and 18) as follows: CT Page 13542
"It is well settled that in determining whether [an act or] practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining whether [an act on practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy." (Citations omitted; internal quotation marks omitted.) Saturn Construction Co. v. PremierRoofing Co. 238 Conn. 293, 310-11, 680 A.2d 1274 (1996).
"A majority of Superior Court cases support the claim that a simple breach of contract, even if intentional, does not amount to a violation of CUTPA; a claimant must show substantial aggravating circumstances to recover under the Act . . . A simple contract breach is not sufficient to establish a violation of CUTPA." (Citations omitted; internal quotation marks omitted.) Holeva v. M Z Associates, Superior Court, judicial district of New Haven, Docket No. 098403 (November 18, 1998) (Levin, J.). "This does not mean that recovering under CUTPA for a breach of contract is impossible . . . the same facts that establish a breach of contract claim may be sufficient to establish a CUTPA violation. " (Citations omitted; internal quotation marks omitted.) Slitz v. PyramidCustom Home Corp., Superior Court, judicial district of Danbury, Docket No. 323247 (April 4, 1997) (Stodlink, J.) (finding allegations of several misrepresentations during course of parties' dealings sufficient to state CUTPA and breach of contract claims).
Essentially, the plaintiff is claiming that misrepresentations were made which constitute unfair trade practices applying the so-called "Cigarette Rule". The short answer to these claims is that the court finds that the plaintiff has not sustained the burden of proof with regard to any of the elements of the above "Cigarette Rule" and that while there were differences and disagreements over the construction project, those differences and disagreements resulted from the neglect of both of the parties to specify clearly the needs and desires they had according to the requirements of the contract which was executed.
The law dealing with negligent misrepresentation is set forth in the CT Page 13543 case of Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 575
(1995) where it is set "this court has long recognized liability for negligent misrepresentation. We have held that even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, or to know, or has the duty of knowing the truth . . ." With respect to the claims relating to negligent misrepresentation, suffice it to say that the plaintiff has not sustained the burden of proving by a preponderance of the credible evidence that misrepresentations were made by the defendant.
The defendant, on its part, is claiming an entitlement to interest at the rate of 10% per year from the date of the certificate of occupancy claiming the applicability of § 37-3a of the Connecticut General Statutes and calls the court's attention to the case of Blakeslee,Appia, Chapman, Inc. v. E.I. Constructors, Inc., 239 Conn. 708 (1997).
In the case of Westport Taxi Service, Inc. v. Westport TransitDistrict, 235 Conn. 1, 41 (1995), the court said "the purpose of an award of interest is to compensate a party for a wrong . . . such an allowance is primarily an equitable determination within the discretion of the trial court . . . Under C.G.S. § 37-3a interest "may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable . . ." The court finds in this regard that because of the good faith beliefs of the plaintiff in her various claims (even though many were not successful) the defendant is not entitled to interest as an element of damages under the statute.
IV. Conclusion
The claims of the plaintiff in count one of her complaint and the claims of the defendant in the second count of the counterclaim will be resolved and decided by the court in a listing set forth below. Those claims listed are found to have been proven by the party advancing the respective claims by a preponderance of the evidence. Any item not listed which was advocated by a party is found to have not been supported by credible evidence which rises to that level of proof.
Specifically, without limiting the generality of the foregoing, the court finds the plaintiff has not sustained her burden of proof relating to the basement systems claims, the vaulted ceilings claim and the Fred Paul claims.
Item Description Amount
I. Amount due on contract without adjustment $18,200 CT Page 13544
II. Credits due plaintiff (shown in brackets)
 1. Carpeting; 167 yds. @ $20 $3,340 less payment by defendant $2,000 ($ 1,340)
2. Medicine cabinet ($ 100)
3. Light fixtures ($ 350)
4. Sliding door to sunroom ($ 1,094)
5. Door chimes ($ 15)
6. Kitchen faucet ($ 169)
7. Security system ($ 140)
8. Concrete steps ($ 600)
9. Asphalt ($ 250)
10. Main bathroom faucet ($ 64)
11. Missing screen door ($ 180)
12. Vanity in bathroom ($ 1,400)
13. Kitchen Island ($ 605)
14. Footing drain ($ 500)
Total Credits to be Deducted ($6,807)
III. Extra Work or Upgrades Due Builder
1. Recessed lighting $1,075
2. Counter lighting $ 170
3. Whirlpool $1,160
4. Waterfall faucet $ 272
5. Anderson window change $2,735
6. Fireplace brick $ 600 CT Page 13545
7. Floor tile differential $1,555
8. Larger oil tank $ 30
9. Frost free faucets $ 79
10. Hardwood flooring change $ 581
11. Kitchen cabinet upgrades $ 766
12. Plastic wrap/basement $ 150
13. Extra Survey Work $1,435
Total Extras/Quantum Meruit $10,608
IV. Adjusted Amount Due Builder $22,001
With respect to counts two, three, four and five of the complaint, the court finds that the plaintiff has not met her burden of proof by a preponderance of the evidence with regard to the said claims.
With regard to the allegations contained in count one and count three of the defendant's counterclaim, the court finds that the defendant has not sustained its burden of proof by a preponderance of the evidence with regard to the said allegations. Therefore, the court denies both the plaintiff's and the defendant's requests for attorneys' fees under the Connecticut Unfair Trade Practices Act and statutory interest under § 37-3a of the Connecticut General Statutes.
Accordingly, the court enters judgment in favor of the defendant against the plaintiff in the amount of $22,001 and orders that upon the payment of the same, defendant shall provide the plaintiff with the release of lis pendens.
Leuba, J.