******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# SOPHIE BLONDEAU *v.* MICHAEL BALTIERRA
## (SC 20282)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.*

*Syllabus*

The plaintiff sought to vacate, and the defendant sought to confirm, an arbitration award dividing the parties' equity in their marital home and allocating various child support expenses in connection with the parties' marital dissolution. The parties, who were married in France, had entered into a premarital agreement that "designate[d], as the law to be applicable to their matrimonial regime, the French law . . . ." That agreement also provided that, in the event of divorce, each party's separate property would remain the separate property of its owner, and that any property acquired in both parties' names was presumed to belong to them jointly, in the absence of proof to the contrary. While married, the parties purchased their marital home in Westport, Connecticut. The plaintiff provided most of the down payment using funds her father had given her, but the parties took title to the home jointly, and the defendant made all of the mortgage, tax, and insurance payments. The plaintiff thereafter commenced the present action to dissolve the marriage. Both parties sought to enforce the premarital agreement, and the trial court approved their agreement to submit the matter to arbitration. The arbitration agreement contained a choice of law provision providing that substantive issues would be governed by Connecticut law but that the arbitrator shall apply the French Civil Code "with regard to any claim by the parties that the [a]rbitrator either vacate [the] premarital agreement or effectuate [the] premarital agreement and if effectuated determine what property is included within the scope of the premarital agreement pursuant to [the] French Civil Code." The arbitrator issued a written award, finding that, pursuant to the premarital agreement, the marital home constituted joint property because it was acquired in both parties' names and neither party had presented evidence to rebut the presumption of joint ownership. The arbitrator also determined that the choice of law provision in the premarital agreement designating French law as the law applicable to the parties' "matrimonial regime" did not govern the distribution of joint property in the event of divorce. Instead, the arbitrator determined that Connecticut law, under which joint assets may be divided equitably in the discretion of the tribunal, rather than French law, under which a party recovers his or her contribution to the joint asset, governed the distribution of the equity in the home. Explaining that the award reflected the parties' respective contributions to the home and protected the defendant from the vagaries of the real estate market, the arbitrator awarded the marital home to the plaintiff but ordered that she pay the defendant $212,000 for his share of the equity. The arbitrator also issued orders regarding the payment of child support, as well as other expenses related to the care of the parties' children. The trial court denied the defendant's application to confirm the arbitration award and granted the plaintiff's motion to vacate the award, concluding that the arbitrator had exceeded her authority under the arbitration agreement and manifestly disregarded the law by ignoring the clear choice of law provisions in the premarital agreement and by dividing the equity in the marital home pursuant to Connecticut law rather than French law. The trial court also concluded that the arbitration award improperly included issues relating to child support. On the defendant's appeal, *held*:

1. There was no merit to the plaintiff's claim that this court lacked appellate jurisdiction on the ground that there was no final judgment from which to appeal insofar as the statute (§ 52-423) providing a right of appeal from an order vacating an arbitration award is inapplicable to arbitration awards that include issues related to child support; § 52-423 expressly confers on parties the right to appeal from orders related to the judicial enforcement of arbitration awards, the fact that the arbitration at issue involved a marital dissolution was of no consequence, and the statute

(§ 46b-66 (c)) limiting the applicability of § 52-423 with respect to orders vacating or confirming an arbitration award that include issues related to child support did not place a categorical condition on a party's right to appeal from such orders but, rather, limited the enforceable scope of the arbitration agreement and award.

2. The defendant could not prevail on his claim that the trial court lacked subject matter jurisdiction to consider the plaintiff's motion to vacate on the ground that the plaintiff failed to identify a factual basis for that motion within the statutory (§ 52-420 (b)) limitation period; the defendant conceded that the plaintiff filed the motion within the limitation period specified in § 52-420 (b), and, although the plaintiff's motion did not articulate a specific factual basis for vacating the award, nothing in § 52-420 requires the movant to set forth the factual basis for his or her motion.

3. The defendant could not prevail on his claim that the trial court lacked subject matter jurisdiction to consider the plaintiff's arguments in her motion to vacate pertaining to child support on the grounds that the plaintiff was not aggrieved by that portion of the award and that the issue of child support had been rendered moot by the parties' pendente lite stipulations addressing that issue: the plain language of the statute (§ 52-418 (a)) authorizing the court to vacate an arbitration award expressly confers on any party to the litigation the right to move to vacate the award, regardless of whether the party is aggrieved by that award, and this court declined to import the requirement of aggrievement into the statute; moreover, the fact that the parties had entered into pendente lite stipulations regarding the issue of child support did not render that issue moot, as pendente lite orders are not permanent but terminate with the conclusion of litigation, and, accordingly, the court was still obligated to make a final child support determination.

4. The trial court incorrectly concluded that the arbitrator's award exceeded the scope of the parties' submission; the issue on appeal was not whether the arbitrator resolved the issues presented correctly but simply whether the issues had been submitted to the arbitrator to decide, which they clearly had been; moreover, in light of the arbitrator's having clearly fulfilled her obligation to interpret and to apply the arbitration agreement, this court would not substitute its own interpretation for that of the arbitrator.

5. The trial court incorrectly concluded that the arbitrator manifestly disregarded the choice of law provision in the premarital agreement by distributing the equity in the marital home in accordance with Connecticut law; in light of the ambiguities in the premarital agreement, which declared that French law governed the parties' "matrimonial regime" without defining that term, and which provided for the distribution upon divorce of separate property and property for which ownership could not be established but not for the distribution of joint property, this court could not conclude that any error that the arbitrator may have made in distributing the equity in the marital home amounted to an egregious or patently irrational rejection of clearly controlling legal principles that would permit a court to vacate the arbitration award under the highly deferential standard governing the manifest disregard of law inquiry.

6. The trial court correctly determined that the arbitrator's award included issues related to child support in violation of § 46b-66 (c) and the statute (§ 52-408) generally governing agreements to arbitrate, but this court concluded that the portion of the award related to the health care, childcare, and extracurricular activity expenses of the parties' children was severable from the remainder of the award: in light of the well established purpose of the child support statutes to protect the rights of children who are not parties to the dissolution matter, this court concluded that a party cannot waive the statutory prohibition against the arbitration of issues related to child support, as that issue is reserved for the trial court, which must by law consider the child support guidelines; accordingly, this court remanded the case with direction to render judgment granting the plaintiff's motion to vacate the arbitration award insofar as it included orders related to child support but denying the motion to vacate the award in all other respects, and denying the application to confirm that portion of the arbitration award relating to child support but granting the application to confirm the award in all other respects.

Argued January 21—officially released September 24, 2020**

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Colin, J.*, approved the parties' agreement to engage in arbitration; thereafter, the defendant filed an application to confirm the arbitration award, and the plaintiff filed a motion to vacate the arbitration award; subsequently, the case was tried to the court, *Heller, J.*; judgment denying the defendant's application to confirm and granting the plaintiff's motion to vacate, from which the defendant appealed. *Reversed in part; judgment directed.*

*Peter J. Zarella*, with whom, on the brief, was *Gary I. Cohen*, for the appellant (defendant).

*Scott T. Garosshen*, with whom were *Kenneth J. Bartschi* and, on the brief, *Michael T. Meehan*, for the plaintiff (appellee).

*Opinion*

ECKER, J. This appeal requires the resolution of a series of jurisdictional and merits related issues arising from the arbitration of a marital dissolution action involving an unusual choice of law provision contained in the parties' arbitration agreement. The dispute focuses primarily on the validity of the arbitrator's award dividing the equity in the parties' marital home and assigning responsibility for certain expenses related to child support. The defendant, Michael Baltierra, appeals from the judgment of the trial court granting the motion of the plaintiff, Sophie Blondeau, to vacate the arbitration award and denying the defendant's corresponding application to confirm the award. The trial court's decision rests on its determination that (1) the arbitrator exceeded her authority under the arbitration agreement by dividing the equity in the marital home under Connecticut law rather than French law, as prescribed by the parties' premarital agreement, (2) the arbitrator, for the same reasons, also manifestly disregarded the law controlling her decision making, and (3) the award improperly included issues related to child support. We conclude that the arbitrator did not exceed her authority under the arbitration agreement or manifestly disregard the law, but we agree with the trial court that the inclusion of issues related to child support in the award was improper. Accordingly, we reverse in part the judgment of the trial court.

The following facts and procedural history are relevant to the issues on appeal. The plaintiff and the defendant were married on June 23, 1999, in Paris, France. The parties executed a premarital agreement providing in relevant part that "the future spouses . . . designate, as the law to be applicable to their matrimonial regime, the French law, as being the law of the state of the wife's nationality. . . . The [f]uture [s]pouses declare that they are adopting as the basis for their union the regime of the separation of property, as such is established by Articles 1536 to 1543 of the [French] Civil Code . . . ." The premarital agreement also provided that "[e]ach one of the spouses shall establish the ownership of his or her property by all means of proof provided by the [l]aw. However, unless there is legal proof to the contrary . . . [r]eal property and business assets shall be presumed to belong to the one of the spouses in whose name the acquisition is made, and to both, if the acquisition is made in both of their names."[1]

The plaintiff and the defendant had three children during their marriage. In 2008, the parties purchased a home in Westport with title held jointly in both of their names. The plaintiff commenced the present action to dissolve the marriage in January, 2016. Both parties sought to enforce the premarital agreement. On August 31, 2017, the parties executed a binding agreement to

arbitrate the dissolution action, which the trial court approved. The parties agreed to appoint a retired judge of the Superior Court, Lynda B. Munro, as the arbitrator. Among its provisions, the arbitration agreement provided: "The parties agree to be guided by the laws  . . . of Connecticut during the arbitration process and with respect to the substantive issues submitted for resolution by the [a]rbitrator, except that the [a]rbitrator shall be guided by the French Civil Code with regard to any claim by the parties that the [a]rbitrator either vacate their premarital agreement or effectuate their premarital agreement and if effectuated determine what property is included within the scope of the premarital agreement pursuant to [the] French Civil Code." The arbitration agreement further provided: "The parties shall arbitrate the dissolution of marriage action, including, but not limited to issues of  . . .  property division for both assets and liabilities, [and] . . . determine the validity and effectuation of the parties' premarital agreement; and if effectuated determine what property is included within the scope of the premarital agreement pursuant to [the] French Civil Code . . . ."

After arbitration hearings, the arbitrator issued the written arbitration award. As we discuss in greater detail later in this opinion, the arbitrator's award designated the parties' Westport home as joint property and then applied Connecticut law to determine how the equity in the home would be distributed between the parties. See part III A of this opinion. The arbitrator awarded the home to the plaintiff and ordered her to pay the defendant $212,000, an amount representing approximately 40 percent of the equity in the home.[2] The arbitrator also issued orders regarding the payment of child care expenses, health insurance and expenses for the children, and ordered the defendant to maintain life insurance for the benefit of the children.

On January 4, 2018, the plaintiff submitted a motion for "articulation/clarification/reargument" of the arbitration award, in which she argued, inter alia, that the arbitration award violated the terms of the premarital agreement by ordering the plaintiff to pay to the defendant $212,000 of the equity in the home. Specifically, the plaintiff argued that the arbitrator should have applied French law to determine that she owned, as separate property, equity equal to her original contribution of $429,000 used to purchase the home, which would have resulted in a substantially lower amount subject to equitable distribution. The arbitrator denied the plaintiff's motion.[3]

On January 9, 2018, the defendant filed an application to confirm the arbitration award. Two days later, on January 11, 2018, the plaintiff filed a motion to vacate the award. On December 17, 2018, the trial court granted the plaintiff's motion to vacate the arbitration award and denied the defendant's application to confirm the

award. The court concluded that, pursuant to General Statutes § 52-418 (a) (4),[4] "the arbitrator exceeded her powers and failed to issue an arbitration award that conformed to the parties' arbitration agreement. . . . The arbitration agreement directed the arbitrator to 'determine the validity and effectuation of the parties' premarital agreement; and if effectuated determine what property is included within the scope of the premarital agreement pursuant to [the] French Civil Code.' The arbitrator instead applied Connecticut law and awarded a property distribution payment to the defendant that contravened the provisions of the arbitration agreement." (Citation omitted.) The trial court also concluded that "the arbitration award failed to effectuate the parties' premarital agreement, which provided that each party's separate property would remain his or her separate property in the event of a dissolution of the marriage," and that "the arbitration award violated General Statutes §§ 46b-66 (c) and 52-408 (c), which specifically prohibit the arbitration of issues relating to child support." The defendant appealed, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the defendant claims that (1) the trial court lacked subject matter jurisdiction to consider the plaintiff's motion to vacate the arbitration award because it was untimely, (2) the trial court lacked subject matter jurisdiction to consider the plaintiff's arguments regarding child support because the plaintiff was not aggrieved and her arguments were moot, (3) the trial court improperly vacated the arbitration award under § 52-418 (a) (4) because the arbitrator neither exceeded her authority under the arbitration agreement nor manifestly disregarded the law, and (4) the trial court improperly vacated the arbitration award on the ground that the award arbitrated issues related to child support in violation of § 46b-66 (c) or, alternatively, that the portion of the award containing orders related to child support was severable. The plaintiff disputes each of the defendant's claims and also argues that the defendant's appeal must be dismissed for lack of a final judgment.

I

APPELLATE JURISDICTION

We must first address the plaintiff's contention that we lack appellate jurisdiction over the present appeal. The plaintiff claims that there is no final judgment from which to appeal because General Statutes § 52-423,[5] which provides a statutory right of appeal from an order vacating an arbitration award, is inapplicable to arbitration awards that include "issues related to child support" pursuant to § 46b-66 (c).[6] This argument is without merit.

Underlying our analysis is the fundamental precept

that "[t]he right of appeal is purely statutory. It is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met. . . . The statutory right to appeal is limited to appeals by aggrieved parties from final judgments." (Citations omitted.) *State* v. *Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983). "The lack of a final judgment is a jurisdictional defect that mandates dismissal." *In re Michael S.*, 258 Conn. 621, 625, 784 A.2d 317 (2001). This limitation would not appear to present an obstacle to the defendant's ability to obtain appellate review in the present case because § 52-423 expressly confers on parties the right to appeal from orders related to the judicial enforcement of arbitration awards: "An appeal may be taken from an order confirming, vacating, modifying or correcting an award, or from a judgment or decree upon an award, as in ordinary civil actions." General Statutes § 52-423. We have explained that "[t]he final judgment in an arbitration proceeding is ordinarily an order of the court vacating, modifying or confirming the arbitrator's award." *Daginella* v. *Foremost Ins. Co.*, 197 Conn. 26, 30, 495 A.2d 709 (1985).

The fact that the arbitration at issue involves a marital dissolution is of no consequence. Section 46b-66 (c) provides in relevant part: "The provisions of chapter 909 [which include the right to appeal conferred by § 52-423] shall be applicable to any agreement to arbitrate in an action for dissolution of marriage under this chapter, provided . . . such agreement and an arbitration pursuant to such agreement shall not include issues related to child support, visitation and custody. An arbitration award in such action shall be confirmed, modified or vacated in accordance with the provisions of chapter 909."

The plaintiff's jurisdictional argument seizes on the proviso in § 46b-66 (c) stating that the arbitration statutes, including the right to appeal under § 52-423 of chapter 909, are applicable in a marital dissolution action "provided . . . such agreement and an arbitration pursuant to such agreement shall not include issues related to child support, visitation and custody." The plaintiff contends, in other words, that § 46b-66 (c) contains a condition precedent categorically excluding from the scope of cases subject to appeal any trial court order vacating or confirming an arbitration award that includes "issues related to child support, visitation and custody." We reject the plaintiff's strained construction of the statute. The restriction contained in § 46b-66 (c) does not operate as a categorical condition on a party's right of appeal but, instead, merely limits the enforceable scope of the parties' arbitration agreement and award under chapter 909.

Our review of this issue is conducted under the familiar rules of statutory construction. "[I]ssues of statutory construction raise questions of law, over which we exer-

cise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Boisvert* v. *Gavis*, 332 Conn. 115, 141–42, 210 A.3d 1 (2019).

The plain language of § 46b-66 (c), read in a vacuum, perhaps could be viewed to support the plaintiff's construction. But context matters in statutory construction, as do practical consequences, and these considerations lead quickly and definitively to a contrary result. The pertinent context here is found in § 52-408[7] of chapter 909, which "explains what agreements to arbitrate are governed by its provisions." *LaFrance* v. *Lodmell*, 322 Conn. 828, 837, 144 A.3d 373 (2016); see id., 838 (reading §§ 46b-66 (c) and 52-408 "to operate harmoniously" because they "are designed to relate to the same subject matter"). Section 52-408 provides in relevant part that "an agreement in writing between the parties to a marriage to submit to arbitration any controversy between them with respect to the dissolution of their marriage, *except issues related to child support, visitation and custody*, shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally." (Emphasis added.)

The plain language of § 52-408 demonstrates that the exception for "issues related to child support, visitation and custody" operates as a limitation on the enforceable scope of the parties' agreement to arbitrate and, by extension, the arbitration award, rather than as a condition precedent to the applicability of chapter 909 itself. See *LaFrance* v. *Lodmell*, supra, 322 Conn. 836 (recognizing that legislature "use[d] limiting language . . . in § 46b-66 (c), when it provided that 'such agreement and an arbitration pursuant to such agreement shall not include issues related to child support, visitation and custody' "). Stated another way, a fair and equitable agreement to arbitrate a marital dissolution action is "valid, irrevocable and enforceable," except insofar as it includes "issues related to child support, visitation and custody"; General Statutes § 52-408; which "must

be resolved only by a court." *Kirwan* v. *Kirwan*, 185 Conn. App. 713, 733, 197 A.3d 1000 (2018). Thus, "if a court finds an agreement to arbitrate fair and equitable, it will be subject to the provisions of chapter 909."[8] *LaFrance* v. *Lodmell*, supra, 838.

This construction comports with common sense. To construe § 46b-66 (c) to impose, as a condition precedent to the applicability of chapter 909, the exclusion of issues related to child support, custody, and visitation, as the plaintiff suggests, would yield absurd and unworkable results. Under the plaintiff's proposed interpretation of the statute, the parties could have a perfectly valid and binding arbitration agreement under § 52-408 but nonetheless be unable to obtain judicial relief to confirm, vacate, correct, or modify the subsequent arbitration award under chapter 909 if it erroneously included even a single, isolated order related to child support, visitation, or custody. A party in that circumstance would be left in limbo and without legal recourse, contractually bound to arbitrate the dissolution action but unable to enforce, modify or vacate the subsequent arbitration award.[9] We do not believe that the legislature intended such a bizarre result. See id., 839 (rejecting interpretation of § 46b-66 (c) that would produce absurd and unworkable results). We conclude that we have jurisdiction over the defendant's appeal pursuant to § 52-423.

II

TRIAL COURT'S JURISDICTION

A

Timeliness Under General Statutes § 52-420

The defendant advances a number of jurisdictional claims of his own. First, the defendant claims that the trial court lacked subject matter jurisdiction to consider the plaintiff's motion to vacate the arbitration award because the motion was untimely under § 52-420 (b).[10] He concedes that the plaintiff filed a motion to vacate within the time limit set by § 52-420 (b) but argues that the motion was deficient because it failed to identify any particularized factual grounds for vacating the award. We disagree.

The following additional procedural history is relevant to our resolution of this issue. The arbitrator issued the award on December 15, 2017. The plaintiff filed a one paragraph motion to vacate the award on January 11, 2018, well within the statutory thirty day time limit. The motion, without elaboration, provided that "[t]he plaintiff submits that the arbitrator exceeded her powers and so imperfectly executed them that no mutual, final and definite award [on] the subject matter was made. As a result, the arbitrator failed to satisfy her duties under . . . § 52-418 and the arbitration agreement." For reasons not apparent from the record, argument on the plaintiff's motion was scheduled for August

10, 2018, seven months after it was filed. On June 7, 2018, the defendant filed an objection to the motion, arguing that the trial court lacked subject matter jurisdiction to consider the motion to vacate because the plaintiff had failed to identify a factual basis for vacating the arbitrator's award within the thirty day time period provided by § 52-420 (b).[11] The day before argument on the plaintiff's motion to vacate, the plaintiff filed a detailed memorandum of law in support of her motion, in which she argued that the award should be vacated because (1) the arbitrator exceeded the scope of the arbitration agreement and exhibited a manifest disregard of the law in violation of § 52-418 (a) (4), (2) the arbitration award included issues related to child support in violation of § 46b-66 (c), and (3) the award violated Connecticut public policy in favor of the enforcement of premarital agreements.

At the hearing on the motion to vacate, the defendant again raised his timeliness challenge, pointing out that he had not received the plaintiff's memorandum of law in support of the motion to vacate until the day before. The trial court offered the defendant a second hearing and an opportunity to file a responsive brief, stating: "I don't want anyone to feel that they were blindsided. So, if we take evidence today and you would like to have a second hearing date after you've had an opportunity, if you feel you did not have adequate notice, I will absolutely give you an opportunity to do that."[12] The court then heard argument on the plaintiff's motion to vacate. On August 17, 2018, the defendant filed a supplemental memorandum of law in opposition to the motion to vacate, in which he again raised his jurisdictional challenges to the plaintiff's motion.

The defendant's claim requires us to determine the necessary degree of specificity that a party must provide in a motion to vacate under § 52-420. This is an issue of statutory interpretation over which we exercise plenary review. See *Wu* v. *Chang*, 264 Conn. 307, 310, 823 A.2d 1197 (2003) (exercising plenary review over issue regarding thirty day time period in § 52-420 (b)). Section 52-420 (b) provides: "No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion." We have previously explained that the failure to comply with this thirty day time limit implicates the trial court's subject matter jurisdiction. See *Wu* v. *Chang*, supra, 312 ("[i]f the motion is not filed within the thirty day time limit [under § 52-420 (b)], the trial court does not have subject matter jurisdiction over the motion" (internal quotation marks omitted)). Section 52-420, however, does not contain any language requiring the moving party to set forth any particularized grounds in support of a timely filed motion to vacate an arbitration award. Cf. *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 683 n.5, 513 A.2d 66 (1986) (observing that motion to strike would be fatally defec-

tive if it failed to comply with then Practice Book § 154, which required that motion to strike based on legal insufficiency "distinctly specify the reason or reasons for each such claimed insufficiency"). We "must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." (Internal quotation marks omitted.) *Vincent* v. *New Haven*, 285 Conn. 778, 792, 941 A.2d 932 (2008).

Nothing in § 52-420 requires a movant to articulate the factual basis for a motion to vacate, modify or correct an arbitration award.[13] The statute simply requires the motion to be filed within thirty days of the date on which notice of the arbitration award was received, and it is undisputed that the plaintiff's motion was filed within the thirty day statutory time period. If the opposing party wishes to obtain greater specificity prior to responding to such a motion or requires additional time to respond after receiving a belated memorandum in support of the motion, it is easy enough for the party seeking more time to make such a request, and presumably the trial court will enter an appropriate scheduling order.[14] Although it would be useful if the initial motion contained as much pertinent information as possible, including its factual grounds, the statute does not require it. We conclude that the plaintiff's motion to vacate was timely filed under § 52-420 and that the trial court had subject matter jurisdiction over the motion.[15]

B

Aggrievement and Mootness

Next, the defendant claims that the trial court lacked subject matter jurisdiction to consider the child support arguments in the plaintiff's motion to vacate because the plaintiff was not aggrieved by the child support portion of the award and her arguments were moot. We again disagree.

Because questions of aggrievement and mootness implicate subject matter jurisdiction, our review over both is plenary. See, e.g., *Andross* v. *West Hartford*, 285 Conn. 309, 321–22, 939 A.2d 1146 (2008). With two exceptions[16] inapplicable here, judicial review of arbitration awards is governed by § 52-418. *Garrity* v. *McCaskey*, 223 Conn. 1, 6, 612 A.2d 742 (1992). Section 52-418 (a) provides in relevant part: "Upon the application of *any party to an arbitration*, the superior court . . . shall make an order vacating the award if it finds any of the following defects . . . ." (Emphasis added.) This language has the dual effect of both limiting the subject right, by providing that only parties to an arbitration may move to vacate an arbitration award,[17] and simultaneously conferring that right on any party, with-

out qualification. In particular, § 52-418 contains no requirement that a party moving to vacate an arbitration award must have been aggrieved by the award, and we have never held that to be a requirement under the statute. Cf. *Dillon* v. *American Brass Co.*, 135 Conn. 10, 16, 60 A.2d 661 (1948) (upholding trial court's order dismissing application to vacate arbitration award but clarifying that proper ground for dismissal was not that moving parties were not aggrieved but, rather, that they "were not parties to the arbitration who had any standing to apply to have it vacated").

The absence of any language in § 52-418 requiring aggrievement is made conspicuous by comparison with General Statutes § 52-263, which provides the statutory right to appeal in civil actions. That section provides in relevant part: "Upon the trial of all matters of fact in any cause or action in the Superior Court . . . *if either party is aggrieved* by the decision of the court or judge upon any question or questions of law arising in the trial . . . he may appeal to the court having jurisdiction from the final judgment of the court . . . ." (Emphasis added.) General Statutes § 52-263; see also General Statutes § 8-7 ("[a]n appeal may be taken to the zoning board of appeals *by any person aggrieved*" (emphasis added)); General Statutes (Supp. 2020) § 45a-186 (b) ("[*a*]*ny person aggrieved* by an order, denial or decree of a Probate Court may appeal therefrom to the Superior Court" (emphasis added)). The aggrievement requirement in civil actions is set forth in the plain language of § 52-263. See *State* v. *Salmon*, 250 Conn. 147, 153, 735 A.2d 333 (1999) ("[o]n its face, [§ 52-263] explicitly sets out three criteria that must be met in order to establish subject matter jurisdiction for appellate review: (1) the appellant must be a party; (2) the appellant must be aggrieved by the trial court's decision; and (3) the appeal must be taken from a final judgment"). Section 52-418, in contrast, has no aggrievement requirement and explicitly provides that "*any party* to an arbitration" may apply for vacatur of an arbitration award.[18] (Emphasis added.) General Statutes 52-418 (a). As a party to the arbitration proceedings, the statute permitted the plaintiff to move to vacate the arbitration award. We decline the defendant's request to import an aggrievement requirement into § 52-418 when the legislature has chosen not to do so.

The defendant also claims that the elements of the arbitration award related to child support had become moot by the time the motion to vacate was adjudicated in the trial court because those issues had been resolved by the stipulation of the parties. "It is a [well settled] general rule that the existence of an actual controversy is an essential requisite to . . . jurisdiction . . . . When, during the pendency of an appeal, events have occurred that preclude [a] . . . court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks

omitted.) *Sweeney* v. *Sweeney*, 271 Conn. 193, 201, 856 A.2d 997 (2004). The defendant points out that the parties had entered into two pendente lite stipulations regarding child support, which already had been approved by the court by the time that the motion to vacate was heard.[19] The defendant also argues that vacating the award related to child support could not have provided the plaintiff with any practical relief because the defendant would still be obligated to pay child support to the plaintiff pursuant to General Statutes § 46b-84 (a)[20] and § 46b-215a-2c (f) (1) (A)[21] and (g)[22] of the Regulations of Connecticut State Agencies.

We reject the defendant's claim that the parties' pendente lite stipulations rendered the issue of child support moot. Pendente lite orders are not permanent orders but, instead, terminate with the conclusion of litigation. *LaBow* v. *LaBow*, 171 Conn. 433, 443, 370 A.2d 990 (1976). Thus, the issue of final orders involving child support—those contained in the arbitration award—was not resolved by the pendente lite stipulations.

Nor were the child support issues rendered moot by virtue of the fact that the defendant still would be obligated by statute and regulation to pay child support if the award were vacated. The amount of child support owed by a party to a dissolution action is an issue to be determined by the trial court in light of the child support guidelines. See General Statutes § 46b-215b (a) ("[t]he child support and arrearage guidelines issued pursuant to section 46b-215a, adopted as regulations pursuant to section 46b-215c . . . shall be considered in all determinations of child support award amounts"); *Tuckman* v. *Tuckman*, 308 Conn. 194, 205, 61 A.3d 449 (2013) ("the legislature has thrown its full support behind the guidelines, expressly declaring that [t]he . . . guidelines established pursuant to [General Statutes §] 46b-215a and in effect on the date of the support determination *shall be considered in all determinations of child support amounts*" (emphasis in original; internal quotation marks omitted)); *Kirwan* v. *Kirwan*, supra, 185 Conn. App. 733 ("the legislature concluded, as a matter of public policy, that issues involving custody, visitation, and child support must be resolved only by a court"). The court may, in its discretion, deviate from the child support guidelines in determining the correct amount of child support in any particular case, but "any deviation from the schedule or the principles on which the guidelines are based must be accompanied by the court's explanation as to why the guidelines are inequitable or inappropriate and why the deviation is necessary to meet the needs of the child." *Maturo* v. *Maturo*, 296 Conn. 80, 95–96, 995 A.2d 1 (2010). The fact that the parties stipulated after arbitration to child support payments based on their consideration of the child support guidelines in no way resolved the issue of child support or released the trial court from the

obligation to make a child support determination on the record. See *Favrow* v. *Vargas*, 231 Conn. 1, 25, 647 A.2d 731 (1994) (trial court "must . . . determine on the record the amount of support indicated by the guidelines schedule"). Child support was a determination to be made by the trial court after and separate from the arbitration proceeding, and it was unresolved when the trial court considered the motion to vacate the arbitration award. Therefore, the issue of child support was not moot.

### III

### ARBITRATION AWARD

### A

### Additional Facts and Standard of Review

The trial court granted the plaintiff's motion to vacate the arbitration award on the grounds that (1) the arbitrator exceeded the scope of the arbitration agreement because the parties bargained for the arbitration of their dissolution action to be governed by French law, but the arbitrator applied Connecticut law to divide the equity in the marital home, and (2) the arbitrator manifestly disregarded the law by ignoring the clear choice of law provisions in the arbitration agreement and the premarital agreement. The defendant challenges both conclusions.

We begin by setting forth additional facts and procedural history relevant to the defendant's claims. The parties purchased their home in 2008 for $1,145,000. The parties made a down payment in the amount of $444,000, largely through funds provided by the plaintiff's father. Whether as a loan or a gift,[23] the plaintiff's father sent the plaintiff approximately $479,000 prior to the purchase, and the plaintiff contributed approximately $429,000 of that amount toward the purchase price of the home. The balance of the down payment, approximately $15,000, was provided by the defendant. Title to the home was taken in both of the parties' names. Over the ensuing years, the defendant made all of the mortgage, tax, and insurance payments on the home, which totaled more than $600,000. The arbitrator determined the fair market value of the home at the time of dissolution to be $1,150,000 and the equity in the home to be $531,000.

In allocating the equity in the parties' home, the arbitrator began with the provisions of the premarital agreement. The arbitrator explained: "The parties' [premarital] agreement contemplates that the parties may own both separate and joint property. On the one hand, [that] agreement provided that each party's separate property would remain the separate property of its owner and belong exclusively to that party in the event of a dissolution of marriage. . . . The [premarital] agreement's treatment of separate property applies to all such property—whether owned at the time of the

marriage or acquired after the marriage by a party solely in his or her name. . . . On the other hand, the [premarital] agreement provides that property acquired by parties in their joint names shall belong to both, absent proof to the contrary." (Citations omitted.) The arbitrator also recognized that the $429,000 the plaintiff had contributed to the purchase of the home had been the separate property of the plaintiff when she received those funds from her father. To determine how the equity in the home should be distributed under these circumstances, the arbitrator explained that "[t]he answer turns on (1) whether the home is separate or joint property and, if joint property, (2) whether Connecticut law or French law determines this distribution. The [premarital] agreement answers the first question, and well established choice of law principles answer the second. The [premarital] agreement provides that the parties' home is joint property. Article III of [that] agreement states that, 'unless there is legal proof to the contrary . . . [r]eal property . . . shall be presumed to belong to the one of the spouses in whose name the acquisition is made, and to both, if the acquisition is made in both of their names.' Here, the parties took title to the marital home jointly. The [premarital] agreement thus presumes that the marital home belongs to both parties, and neither party presented evidence sufficient to rebut this clear presumption."

The arbitrator then addressed how to divide the equity in the marital home. "Though the [premarital] agreement provides that the marital home is joint property, it does not dictate how such joint property is to be divided—a point on which the parties now disagree. The plaintiff contends that French law should determine the division, [whereas] the defendant contends that Connecticut law controls. Under French law, each party would recover his or her contribution to the joint asset and would receive any return on investment or profit thereon in proportion to the contribution made. . . . Under Connecticut law, the joint asset may be divided in the discretion of the tribunal." (Citation omitted; footnote omitted.) The arbitrator applied the "most significant relationship approach" of § 188 of the Restatement (Second) of Conflict of Laws to resolve the conflict of laws. The arbitrator first determined that the parties had not explicitly chosen a particular rule of law to govern their contractual rights and duties as to jointly owned property in the event of divorce. Specifically, the arbitrator determined that "[t]he [premarital] agreement does . . . explicitly choose French law to govern the parties' relationship during the term of their marriage. In article I of [that] agreement, the parties 'designate[d], as the law to be applicable *to their matrimonial regime*, the French law,' and 'adopt[ed] as the basis for their union the regime of the separation of property, as . . . established by [the French Civil Code].' . . . During their marriage, the parties were to

manage their property and answer for their own debts under the French regime of separation. . . . The [pre-marital] agreement does not, however, include a similar choice of law provision to govern the parties' joint property in the event of divorce." (Citations omitted; emphasis in original.) Having concluded that the parties had not designated a particular rule of law to govern the distribution of the equity in the home, the arbitrator applied the most significant relationship approach and determined that Connecticut law should govern the division of the equity in the home.

Applying Connecticut law to distribute the equity in the home, the arbitrator awarded title of the home to the plaintiff and ordered her to pay $212,000 to the defendant. The arbitrator explained: "The payment to be made by the plaintiff to the defendant . . . is a reflection that the parties have both contributed to the ownership of [the home]. Further, it provides that the defendant will receive his equitable share without concern to the vagaries of the real estate market. Finally, it is a part of the crafted mosaic intended to adequately address both the statutory criteria for the division of joint property and the award of spousal support."

The principles governing our review of the defendant's claims are well established. "Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . . Furthermore, in applying this general rule of deference to an arbitrator's award, [e]very reasonable presumption and intendment will be made in favor of the [arbitration] award and of the arbitrators' acts and proceedings." (Internal quotation marks omitted.) *State* v. *Connecticut State Employees Assn., SEI Local 2001*, 287 Conn. 258, 270, 947 A.2d 928 (2008). "Judicial review of [arbitration] decisions is narrowly confined. . . . When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' [arbitration] agreement." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 80, 881 A.2d 139 (2005). This is because "[a]rbitration is a creature of contract and the parties themselves, by the terms of their submission, define the powers of the arbitrators." (Internal quotation marks omitted.) *LaFrance* v. *Lodmell*, supra, 322 Conn. 850.

The standard of review in this context depends on whether the submission to the arbitrator is restricted or unrestricted. A restricted submission, which expressly "restrict[s] the breadth of the issues [to be resolved by the arbitrator], reserv[es] explicit rights, or condition[s] the award on court review," is subject to de novo review. (Internal quotation marks omitted.) *Office of*

*Labor Relations* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, 288 Conn. 223, 229, 951 A.2d 1249 (2008). The arbitrator's award in an unrestricted submission, by contrast, is considered "final and binding; thus the courts will not review the . . . award for errors of law or fact." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 80. "Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved." (Internal quotation marks omitted.) Id.

The parties have not addressed in their briefs whether the submission to the arbitrator was restricted; nor have they asked us to review de novo the award's division of the home equity. Instead, both parties present their competing arguments using the "scope of the submission" and "manifest disregard of the law" grounds to vacate an award under § 52-418 (a) (4). That presentation presupposes an unrestricted submission. See *Toland* v. *Toland*, 179 Conn. App. 800, 807 n.5, 182 A.3d 651 ("analysis under § 52-418 . . . applies when a party attempts to vacate *unrestricted* submissions" (emphasis in original)), cert. denied, 328 Conn. 935, 183 A.3d 1174 (2018). We will address the parties' claims as they have been presented to us and, therefore, apply the standard of review applicable to unrestricted submissions.[24] See, e.g., *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 258 Conn. 101, 112, 779 A.2d 737 (2001) ("[a] submission is unrestricted unless otherwise agreed by the parties" (internal quotation marks omitted)); *Maluszewski* v. *Allstate Ins. Co.*, 34 Conn. App. 27, 36, 640 A.2d 129 ("[T]he parties easily could have provided that the arbitrators' conclusions of law would be subject to de novo review. The failure explicitly to do so in this case leaves the submission unrestricted."), cert. denied, 229 Conn. 921, 642 A.2d 1214 (1994).

The consequence of this limitation is significant because it means that judicial review is confined to determining only whether the arbitrator exceeded her authority under § 52-418. "[A] claim that the arbitrators have 'exceeded their powers' may be established under § 52-418 in either one of two ways: (1) the award fails to conform to the submission, or, in other words, falls outside the scope of the submission; or (2) the arbitrators manifestly disregarded the law." *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 85. Contrary to the trial court's ruling, neither ground for judicial intervention exists here.

B

## Scope of the Award

"The standard for reviewing a claim that the award does not conform to the submission requires what we have termed 'in effect, de novo judicial review.'" Id., 84. The de novo label in this context means something very different from typical de novo review because review under this standard and in this setting "is limited to a comparison of the award to the submission. Our inquiry generally is limited to a determination as to whether the parties have vested the arbitrators with the authority to decide the issue presented or to award the relief conferred. With respect to the latter, we have explained that, as long as the arbitrator's remedies were consistent with the agreement they were within the scope of the submission. . . . In making this determination, the court may not engage in fact-finding by providing an independent interpretation of the contract, but simply is charged with determining if the arbitrators have ignored their obligation to interpret and to apply the contract as written." (Citations omitted; footnotes omitted; internal quotation marks omitted.) Id., 85–86; see also *AFSCME, Council 4, Local 2663* v. *Dept. of Children & Families*, 317 Conn. 238, 252 n.8, 117 A.3d 470 (2015) ("although this court has stated that a court's review of an arbitration award is in effect, de novo judicial review, this means only that we draw our own conclusions regarding whether an arbitration award conforms to the submission" (internal quotation marks omitted)). To justify vacating an award on the ground that the award exceeds the scope of the submission, "we must determine that the award *necessarily* falls outside the scope of the submission." (Emphasis in original.) *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 98; see also *United Paperworkers International Union, AFL-CIO* v. *Misco, Inc.*, 484 U.S. 29, 38, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987) ("as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision"); *AFSCME, Council 4, Local 1303-325* v. *Westbrook*, 309 Conn. 767, 780, 75 A.3d 1 (2013) ("It is not [the court's] role to determine whether the arbitrator's interpretation of the collective bargaining agreement was correct. It is enough to uphold the judgment of the court, denying the [union's] application to vacate the award, that such interpretation was a good faith effort to interpret the terms of the collective bargaining agreement." (Internal quotation marks omitted.)).

To determine whether the arbitrator's award necessarily fell outside the scope of the submission, we begin with the language of the arbitration agreement. The parties' disagreement is centered on two of its provisions. The first provides in relevant part: "The parties agree to be guided by the laws . . . of Connecticut

during the arbitration process and with respect to the substantive issues submitted for resolution by the [a]rbitrator, except that the [a]rbitrator shall be guided by the French Civil Code with regard to any claim by the parties that the [a]rbitrator either vacate their premarital agreement or effectuate their premarital agreement and if effectuated determine what property is included within the scope of the premarital agreement pursuant to [the] French Civil Code." The second provision provides in relevant part: "The parties shall arbitrate the dissolution of marriage action, including, but not limited to issues of" how to "determine the validity and effectuation of the parties' premarital agreement; and if effectuated determine what property is included within the scope of the premarital agreement pursuant to [the] French Civil Code . . . ."

The plaintiff argues that these provisions required the arbitrator to apply the French Civil Code to determine whether property was joint or separate and to allocate property between the parties in accordance with that law. The defendant advocates a narrower construction, under which the arbitration agreement required French law to be applied to only two issues: (1) whether the premarital agreement would be enforced, and (2) what property came within the scope of the premarital agreement. The defendant contends that, because there ultimately was no dispute between the parties over either the enforceability of the premarital agreement or the inclusion of the marital home within the scope of the assets subject to the premarital agreement, the arbitrator's award plainly conformed to the scope of the submission.

The language of the arbitration agreement is unclear at best with regard to the issues in the present case.[25] We need not, however, choose between the parties' competing interpretations of these specific provisions contained in the arbitration agreement. The question for this court is not whether the arbitrator decided the issues correctly but only whether the issues were submitted for her to decide. "In determining whether an arbitrator has exceeded the authority granted under the contract, a court cannot base the decision on whether the court would have ordered the same relief, or whether . . . the arbitrator correctly interpreted the contract. The court must instead focus on whether the [arbitrator] had authority to reach a certain issue . . . . [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of authority, the award must be enforced. The arbitrator's decision cannot be overturned even if the court is convinced that the arbitrator committed serious error." (Internal quotation marks omitted.) *Comprehensive Orthopaedics & Musculoskeletal Care, LLC* v. *Axtmayer*, 293 Conn. 748, 755, 980 A.2d 297 (2009). "[A]s long as the arbitrator's remedies were consistent with the agreement they were within the scope of the submis-

sion. . . . [T]he court may not engage in fact-finding by providing an independent interpretation of the contract, but simply is charged with determining if the arbitrators have ignored their obligation to interpret and to apply the contract as written." (Citations omitted; internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 86; see also *Stratford* v. *International Assn. of Firefighters*, *AFL-CIO*, *Local 998*, 248 Conn. 108, 116, 728 A.2d 1063 (1999) ("it is the arbitrator's judgment that was bargained for and contracted for by the parties, and we do not substitute our own judgment merely because our interpretation of the agreement or contract at issue might differ from that of the arbitrator").

We have no difficulty answering this question in the affirmative. There is no evidence that the arbitrator ignored her obligation to interpret and to apply the arbitration agreement. The arbitrator carefully considered the arbitration submission in reaching her award, as demonstrated by her reference to the contested language in the arbitration agreement and her explanation that "both parties are asking this arbitrator and the court to enforce the premarital agreement in accordance with its terms. Therefore, the controversy between them is not as to whether the premarital agreement should be enforced but, instead, what the reach of its terms [is] regarding assets, and, as to certain issues, whether French law or Connecticut law applies." The arbitrator determined that the home equity fell within the scope of the premarital agreement, as evidenced by the arbitrator's reliance on the premarital agreement to reach her determination that the home was joint property because it was held in both parties' names.

In comparing the award to the submission, it is clear that the arbitrator fulfilled her obligation to interpret and to apply the arbitration agreement. See, e.g., *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 85–86. Although the plaintiff challenges the correctness of the arbitrator's interpretation of the arbitration agreement, it is beyond the scope of our review to substitute our own interpretation of the contract for the arbitrator's when the arbitrator had fulfilled her obligation to interpret and to apply the agreement. See *AFSCME*, *Council 4*, *Local 1303-325* v. *Westbrook*, supra, 309 Conn. 780; *Harty* v. *Cantor Fitzgerald & Co.*, supra, 85–86. We agree with the defendant that the arbitrator's award did not exceed the scope of the parties' submission, and the trial court erred in ruling that it did.

C

Manifest Disregard of the Law

The defendant next claims that the trial court incorrectly concluded that the arbitrator manifestly disregarded the law when she distributed the equity in the

marital home pursuant to Connecticut law. In response, the plaintiff argues that the arbitrator manifestly disregarded the law by not adhering to the choice of law provision in the premarital agreement, which she argues designated French law as governing the distribution of joint property. Because the arbitrator's determination was not an "egregious or patently irrational misperformance of duty"; (internal quotation marks omitted) *Saturn Construction Co.* v. *Premier Roofing Co.*, 238 Conn. 293, 308, 680 A.2d 1274 (1996); we agree with the defendant that the arbitrator did not manifestly disregard the law.

Manifest disregard of the law is an extremely deferential standard of review. "[T]he manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles." (Internal quotation marks omitted.) *Garrity* v. *McCaskey*, supra, 223 Conn. 10. This level of deference is appropriate because the parties voluntarily have chosen arbitration as a means to resolve their legal dispute. See id., 4 ("[w]hen the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement"); see also *Groton* v. *United Steelworkers of America*, 254 Conn. 35, 51–52, 757 A.2d 501 (2000) ("Voluntary arbitration is a method by which parties freely determine that their disputes will be resolved, at least in the first instance, not by public officials such as judges or administrators, but by arbitrators. Our legal system encourages that determination by ordinarily giving great deference to . . . both the factual and legal determinations of the arbitrators." (Citation omitted.)). As an essential component of that choice, they have agreed to bypass the usual adjudicative apparatus, including its conventional appellate features, for the advantages that accompany private arbitration. To borrow a phrase from the marriage ceremony, that choice is made "for better or for worse," which, in this context, means that the arbitrator's decision is final and binding unless it is manifestly, obviously, and indisputably wrong. Review by a judicial authority is not forfeited entirely, but it is conducted under a different and far less rigorous level of scrutiny.

Under this "highly deferential standard"; *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 102; our precedent instructs that three elements must be satisfied before we will "vacate an arbitration award on the ground that the arbitration panel manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitration panel appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbi-

tration panel is [well-defined], explicit, and clearly applicable." (Internal quotation marks omitted.) *Norwalk Police Union, Local 1727, Council 15, AFSCME, AFL-CIO* v. *Norwalk*, 324 Conn. 618, 629, 153 A.3d 1280 (2017). "[E]very reasonable presumption and intendment will be made in favor of the [arbitration] award and of the arbitrators' acts and proceedings." (Internal quotation marks omitted.) *State* v. *Connecticut State Employees Assn., SEIU Local 2001*, supra, 287 Conn. 270.

These elements are not satisfied in the present case. This should come as no surprise to the parties in light of the nature of the legal issues that they agreed to have determined by the arbitrator—which include questions requiring the interpretation of an opaquely worded, French matrimonial contract that incorporates unfamiliar provisions of French law submitted to a sole arbitrator pursuant to an arbitration agreement, which itself employed inexact language providing that the arbitrator shall be "guided" by the relevant French law only in limited respects. Under these circumstances, each of the parties—knowing that litigation was impending—voluntarily accepted a real and substantial risk of being disappointed by an outcome with very limited opportunity for judicial review under the manifest disregard standard.

The premarital agreement provides that, "unless there is legal proof to the contrary . . . [r]eal property and business assets shall be presumed to belong to the one of the spouses in whose name the acquisition is made, and to both, if the acquisition is made in both of their names." The arbitrator found that the parties' marital home was joint property under the premarital agreement because it was acquired in both parties' names and neither party had presented evidence to rebut the presumption of joint ownership. Because we do not review an arbitrator's award under an unrestricted submission for errors of law or fact; *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 80; we will not disturb the arbitrator's finding, uncontested by the parties, that there was no evidence directly or expressly rebutting the agreement's presumption of joint ownership; nor will we disturb the arbitrator's resulting classification of the home as joint property under the premarital agreement. The arbitrator's determination that the home equity was joint property under the premarital agreement demonstrated careful consideration of the terms of the agreement, aided, as the arbitrator deemed pertinent, by the testimony of the parties' expert witnesses on French law. The arbitration award did not constitute an "egregious or patently irrational rejection of clearly controlling legal principles" constituting a manifest disregard of the law. *Garrity* v. *McCaskey*, supra, 223 Conn. 11.

The plaintiff argues that the arbitrator manifestly dis-

regarded the choice of law provision in the premarital agreement, which "designate[d], as the law to be applicable to their matrimonial regime, the French law . . . ."[26] Typically, a claim that the arbitrator has manifestly disregarded the law depends on some applicable statutory provision or common-law rule that the arbitrator is claimed to have egregiously ignored. See, e.g., *Board of Education* v. *New Milford Education Assn.*, 331 Conn. 524, 531, 205 A.3d 552 (2019) (claimed manifest disregard of collateral estoppel and res judicata doctrines); *Economos* v. *Liljedahl Bros., Inc.*, 279 Conn. 300, 308, 901 A.2d 1198 (2006) (claimed manifest disregard of Home Improvement Act, General Statutes § 20-429 (a)); *Saturn Construction Co.* v. *Premier Roofing Co.*, supra, 238 Conn. 305–306 (claimed manifest disregard of statutory notice requirement under General Statutes § 49-41a); *Garrity* v. *McCaskey*, supra, 223 Conn. 11–12 (claimed manifest disregard of federal and state statutes of limitations). Here, the plaintiff argues that the arbitrator manifestly disregarded a binding, contractual choice of law provision in the premarital agreement executed by the parties. We disagree that "[t]he exceptionally high burden for proving a claim of manifest disregard of the law under § 52-418 (a) (4)" is met in the present case. (Internal quotation marks omitted.) *State* v. *Connecticut State Employees Assn., SEIU Local 2001*, supra, 287 Conn. 280.

The arbitrator's decision to distribute the home equity pursuant to Connecticut law was based on two related determinations, namely, (1) her interpretation and application of the provisions in the premarital agreement governing the classification of the home as joint property, and (2) her conclusion that the separation of property "matrimonial regime" chosen by the parties did not designate French law to govern the distribution of joint property. The arbitrator identified a number of gaps in the premarital agreement that led her to conclude that it did not explicitly designate the law governing the distribution of joint property. The arbitrator noted that the premarital agreement specifically provided that "each party's separate property would remain the separate property of its owner and belong exclusively to that party in the event of a dissolution of [the] marriage." The agreement, however, contained no equally explicit provision for the division of joint property. Indeed, the only other mention in the premarital agreement of how property would be treated upon the dissolution of the marriage appeared in a single paragraph, which provided: "At the time of the dissolution of the marriage, the spouses or their heirs and representatives shall take back all items for which they can prove being the owners by title, use, mark or invoice. All items over which no right of ownership can be proven shall be deemed to belong automatically and indivisibly to each one of the spouses, in equal parts." Thus, the premarital agreement provided for the distri-

bution upon divorce of separate property and property for which no owner could be established but contained no similar provision regarding joint property.

Finding no explicit directive in the premarital agreement for the distribution of joint property upon divorce, the arbitrator then queried whether the agreement provided for a choice of law governing the distribution of joint property. The arbitrator explained: "The [premarital] agreement does . . . explicitly choose French law to govern the parties' relationship during the term of their marriage. In article I of [that] agreement, the parties 'designate[d], as the law to be applicable *to their matrimonial regime*, the French law,' and 'adopt[ed] as the basis for their union the regime of the separation of property, as . . . established by [the French Civil Code].' . . . During their marriage, the parties were to manage their property and answer for their own debts under the French regime of separation. . . . The [premarital] agreement does not, however, include a similar choice of law provision to govern the parties' joint property in the event of divorce." (Citations omitted; emphasis in original.) The arbitrator's conclusion that the distribution of joint property upon dissolution was not a subject within the "matrimonial regime" referred to by the premarital agreement was supported in part by her finding that, "[h]istorically, [a French marital contract's] purpose was to govern the relationship of the spouses during their marriage and to make provisions for the eventuality of death—not the eventuality of divorce. Only in more recent times have French marital contracts also been used to define the rights of the spouses in the event of either death or divorce." The uncertainty of the historical tradition, when combined with the textual ambiguity in the premarital agreement itself, undermines the plaintiff's claim of manifest error.

The plaintiff claims that the arbitrator improperly construed the choice of law provision in the premarital agreement to be inapplicable to the distribution of joint property upon dissolution of the parties' marriage. Essentially, the plaintiff takes issue with the arbitrator's interpretation of the meaning and extent of the "matrimonial regime" by which the parties intended to be governed under the premarital agreement. It is well established, however, that mere disagreement with the arbitrator's interpretation of an agreement falls far short of establishing a manifest disregard of the law. See *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 103–104 ("[T]he defendant's claim is predicated largely on the arbitrators' interpretation of the agreement and factual findings . . . . [T]hese issues are beyond the scope of our review." (Footnote omitted.)); *Saturn Construction Co.* v. *Premier Roofing Co.*, supra, 238 Conn. 308 ("[a] party's mere disagreement with the panel's interpretation and application of established legal principles is a far cry from the egregious or patently irrational misperformance of duty that must be shown

in order to prove a manifest disregard of the law under § 52-418 (a) (4)" (internal quotation marks omitted)).

The deference owed to the arbitrator's decision is not defeated, even if the losing party's preferred interpretation finds substantial support upon a close analysis of the controlling legal principles at issue. In other words, the plaintiff does not satisfy the manifest disregard standard simply by persuading us that the arbitrator misinterpreted the choice of law provision in the premarital agreement.[27] See *State* v. *Connecticut State Employees Assn.*, *SEIU Local 2001*, supra, 287 Conn. 281 ("even if the arbitrator's decision constitutes a misapplication of the relevant law, we are not at liberty to set aside an [arbitrator's] award because of an arguable difference regarding the meaning or *applicability* of laws" (emphasis in original; internal quotation marks omitted)); *Garrity* v. *McCaskey*, supra, 223 Conn. 11–12 ("[W]e do not review an arbitrator's decision merely for errors of law . . . . Even if the arbitrators were to have misapplied the [applicable law], such a misconstruction of the law would not demonstrate the arbitrators' egregious or patently irrational rejection of clearly controlling legal principles."). This deference follows from our narrowly confined review of arbitration awards. *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 80. The parties bargained for arbitration and established the authority of the arbitrator through their submission. We will not substitute our interpretation of the premarital agreement for that of the arbitrator. See, e.g., *Oxford Health Plans, LLC* v. *Sutter*, 569 U.S. 564, 573, 133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013) ("The arbitrator did what the parties requested: He provided an interpretation of the contract resolving [their dispute]. His interpretation went against [the petitioner], maybe mistakenly so. But still, [the petitioner] does not get to rerun the matter in a court. . . . [T]he question for a judge is not whether the arbitrator construed the parties' contract correctly, but whether he construed it at all."); *State* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, 265 Conn. 771, 780, 830 A.2d 729 (2003) ("[I]t was incumbent upon the arbitrator to interpret the relevant language. Although the plaintiff and the trial court may disagree with the arbitrator's ultimate interpretation of that section . . . it is the arbitrator's judgment that was bargained for . . . and we do not substitute our own judgment merely because our interpretation of the agreement or contract at issue might differ from that of the arbitrator." (Internal quotation marks omitted.)).

To meet the applicable standard, the error must be obvious by reference to explicit and clearly applicable law. *Norwalk Police Union, Local 1727, Council 15, AFSCME, AFL-CIO* v. *Norwalk*, supra, 324 Conn. 629. The plaintiff's preferred interpretation in this case may be correct, but it is not *obviously* correct based on the *explicit* requirements of the premarital agreement or

French law. The ambiguities in the premarital agreement go to the heart of the required distribution of joint property upon divorce, making the proper distribution of that property far from obvious. To summarize, the premarital agreement explicitly provided for the distribution upon divorce of separate property and property for which ownership could not be established, but it was conspicuously silent on the distribution of joint property upon divorce. The premarital agreement declared that French law governed their "matrimonial regime" but left the meaning of this critical term undefined. In light of these ambiguities, any error that may have been made by the arbitrator in distributing the equity in the marital home did not amount to an "egregious or patently irrational misperformance of duty"; (internal quotation marks omitted) *Saturn Construction Co.* v. *Premier Roofing Co.*, supra, 238 Conn. 308; that would permit a court to vacate the arbitration award.

## IV

### ISSUES RELATED TO CHILD SUPPORT

Finally, the defendant claims that the trial court improperly vacated the arbitration award on the ground that the award included issues related to child support in violation of §§ 46b-66 (c) and 52-408. See footnotes 6 and 7 of this opinion. Alternatively, the defendant claims that, even if the trial court correctly concluded that the award violated §§ 46b-66 (c) and 52-408, the portion of the award related to child support was severable from the remainder of the award. The plaintiff responds that the trial court correctly concluded that the award violated §§ 46b-66 (c) and 52-408 and argues that the portion of the award related to child support was not severable. We agree with the plaintiff that the trial court correctly determined that the award violated §§ 46b-66 (c) and 52-408 but conclude that the portion of the award related to child support was severable from the remainder of the award.

A number of the provisions in the award directly concerned the care and support of the parties' children.[28] The award allocated the payment of child care expenses, health insurance and health expenses for the children, and the children's extracurricular expenses, and required the defendant to maintain life insurance for the benefit of the children.[29] The defendant does not claim that the trial court incorrectly concluded that these were "issues related to child support" prohibited under §§ 46b-66 (c) and 52-408. Instead, the defendant claims that the inclusion of issues related to child support could be challenged only under the common-law, public policy grounds for vacating an award and that the plaintiff waived and should be estopped from challenging the award on those grounds. We are not persuaded.

To address the defendant's argument, we must determine whether the prohibition on the inclusion of child support in arbitration awards under §§ 46b-66 (c) and 52-408 is capable of being waived by a party to an arbitration. "Waiver is the intentional relinquishment or abandonment of a known right or privilege. . . . As a general rule, both statutory and constitutional rights and privileges may be waived." (Citations omitted; internal quotation marks omitted.) *Pereira* v. *State Board of Education*, 304 Conn. 1, 39–40, 37 A.3d 625 (2012). However, "only the party who benefits from or is protected by the right may waive that right. . . . Parties may not waive statutory rights [when] a question of public policy is involved. Likewise, a law established for a public reason cannot be waived or circumvented by a private act or agreement." (Citations omitted; internal quotation marks omitted.) Id., 40.

As we stated in part I of this opinion, §§ 46b-66 (c) and 52-408 prohibit the inclusion of issues related to child support in arbitration awards. On the face of these statutes, it is clear that the prohibition is not intended to safeguard the rights of the parties to the arbitration in a marital dissolution action but to protect the rights of their nonparty children. "[T]he fundamental purpose of child support . . . is to provide for the care and well-being of minor children . . . ." (Internal quotation marks omitted.) *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 555, 46 A.3d 112 (2012). Thus, the "[statutory] duty on divorced parents to support the minor children of their marriage . . . creates a corresponding *right in the children* to such support." (Emphasis added; internal quotation marks omitted.) Id. By reserving the issue of child support for determination by the trial court, which must by law consider the state's child support guidelines; *Tuckman* v. *Tuckman*, supra, 308 Conn. 205; the legislature ensured fidelity to these vital interests. See, e.g., *Kirwan* v. *Kirwan*, supra, 185 Conn. App. 733 ("although binding arbitration may be utilized to resolve many types of issues arising in the course of civil litigation, including in a marital dissolution action, the legislature concluded, as a matter of public policy, that issues involving custody, visitation, and child support must be resolved only by a court").

In light of these well established purposes behind the child support statutes, the statutory prohibition on the arbitration of issues related to child support "serves important public and institutional policy objectives that are independent of, and perhaps even paramount to, [the plaintiff's] interest as a party to the litigation." (Emphasis omitted.) *Santiago* v. *State*, 261 Conn. 533, 543–44, 804 A.2d 801 (2002). The right to a child support determination that "provide[s] for the care and well-being of minor children"; (internal quotation marks omitted) *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 555; was not the plaintiff's to waive. Cf. *State* v. *Banks*,

321 Conn. 821, 856, 146 A.3d 1 (2016) (*Rogers, C. J.,* concurring) ("I find it extremely doubtful . . . that the state could waive the [statutory] requirement that [currently incarcerated felons] submit to the taking of a DNA sample, which serves important public . . . policy objectives" (internal quotation marks omitted)). The plaintiff did not, and could not, waive the statutory prohibition against the arbitration of issues related to child support.

Even so, the portion of the award that included issues related to child support was severable from the remainder of the award. "We previously have characterized the financial orders in dissolution proceedings as resembling a mosaic, in which all the various financial components are carefully interwoven with one another. . . . Accordingly, when an appellate court reverses a trial court judgment based on an improper alimony, property distribution, or child support award, the appellate court's remand typically authorizes the trial court to reconsider all of the financial orders. . . . We also have stated, however, that [e]very improper order . . . does not necessarily merit a reconsideration of all of the trial court's financial orders. A financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors. . . . In other words, an order is severable if its impropriety does not place the correctness of the other orders in question. . . . Determining whether an order is severable from the other financial orders in a dissolution case is a highly fact bound inquiry." (Citations omitted; internal quotation marks omitted.) *Tuckman* v. *Tuckman*, supra, 308 Conn. 214. We previously have explained that an invalid portion of an arbitration award may be severed from the remainder of the award. See *Bodner* v. *United Services Automobile Assn.*, 222 Conn. 480, 489, 610 A.2d 1212 (1992) ("[when] specific questions have been submitted to the arbitrators, we have held that the portion of the arbitrators' award that was entirely outside the submission was void"); *Local 63, Textile Workers Union of America, C.I.O.* v. *Cheney Bros.*, 141 Conn. 606, 619, 109 A.2d 240 (1954) ("when an arbitrator exceeds his authority, the award is void only to the extent that he does so, if the part [that] is void can be separated from the rest without injustice and without affecting the merits of the part of the award [that] is within the submission"), cert. denied, 348 U.S. 959, 75 S. Ct. 449, 99 L. Ed. 748 (1955), and cert. denied, 348 U.S. 959, 75 S. Ct. 450, 99 L. Ed. 478 (1955); *Parmelee* v. *Allen*, 32 Conn. 115, 116 (1864) ("[i]f several distinct matters are submitted [to arbitration], the award as to some of them may be good while it is void as to the residue").

Nothing in the arbitrator's award indicates that the orders related to child support are interdependent with the other financial orders. Indeed, the parties stipulated to a child support presumptive minimum *before* entering

arbitration and had this amount entered as a separate order of the court, as the arbitrator referenced in her award. We conclude that the portion of the arbitration award pertaining to child care expenses, child related health expenses, extracurricular expenses, and the maintenance of life insurance for the benefit of the children is severable from the alimony, property division, and other unrelated financial orders in the award. See *Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 390, 999 A.2d 721 (2010) (remanding for reconsideration of child support orders alone); *Maturo* v. *Maturo*, supra, 296 Conn. 125 (same); *Kavanah* v. *Kavanah*, 142 Conn. App. 775, 785, 66 A.3d 922 (2013) (same).

The judgment is reversed insofar as the trial court granted the plaintiff's motion to vacate and denied the defendant's application to confirm that portion of the arbitration award relating to the division between the parties of the equity in the marital home; the judgment is affirmed insofar as the trial court granted the plaintiff's motion to vacate and denied the defendant's application to confirm that portion of the arbitration award relating to child support; the case is remanded with direction to render judgment (1) granting the plaintiff's motion to vacate the arbitration award insofar as it included orders related to child support but denying the motion to vacate the award in all other respects, and (2) denying the application to confirm that portion of the arbitration award relating to child support but granting the application to confirm the award in all other respects.

In this opinion the other justices concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

** September 24, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] All references in this opinion to the premarital agreement are to the certified English translation of the agreement provided by the plaintiff. The accuracy of this translation is uncontested.

[2] The arbitrator determined the total equity in the home to be $531,000. That factual finding has not been challenged.

[3] The arbitrator corrected a scrivener's error that the plaintiff had identified in her motion.

[4] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any of the following defects: . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[5] General Statutes § 52-423 provides: "An appeal may be taken from an order confirming, vacating, modifying or correcting an award, or from a judgment or decree upon an award, as in ordinary civil actions."

[6] General Statutes § 46b-66 (c) provides in relevant part: "The provisions of chapter 909 shall be applicable to any agreement to arbitrate in an action for dissolution of marriage under this chapter, provided . . . such agreement and an arbitration pursuant to such agreement shall not include issues related to child support, visitation and custody. An arbitration award in such action shall be confirmed, modified or vacated in accordance with the provisions of chapter 909."

[7] General Statutes § 52-408 provides: "An agreement in any written contract, or in a separate writing executed by the parties to any written contract, to settle by arbitration any controversy thereafter arising out of such contract, or out of the failure or refusal to perform the whole or any part thereof, or a written provision in the articles of association or bylaws of

an association or corporation of which both parties are members to arbitrate any controversy which may arise between them in the future, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or an agreement in writing between the parties to a marriage to submit to arbitration any controversy between them with respect to the dissolution of their marriage, except issues related to child support, visitation and custody, shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally."

[8] We recognize that, in *LaFrance*, we stated that, "before chapter 909 can apply to an agreement to arbitrate between parties to a marriage, it must meet the requirements set forth in § 46b-66 (c)." *LaFrance* v. *Lodmell*, supra, 322 Conn. 837. At the same time, however, we stated that §§ 46b-66 (c) and 52-408 must be "read . . . to operate harmoniously. Indeed, it is important to note that the relevant provisions within §§ 46b-66 (c) and 52-408 were both adopted by the legislature in 2005. See Public Acts 2005, No. 05-258, §§ 1 and 2." *LaFrance* v. *Lodmell*, supra, 838. We therefore construed § 46b-66 (c) to provide that, "if a court finds an agreement to arbitrate fair and equitable, it will be subject to the provisions of chapter 909. In turn, § 52-408 includes agreements to arbitrate between parties to a marriage in those agreements to arbitrate that are governed by chapter 909, subject to the court's finding that the agreement to arbitrate is fair and equitable." Id. In the present case, it is undisputed that the parties' agreement to arbitrate is fair and equitable; therefore, pursuant to *LaFrance*, we conclude that it is "subject to the provisions of chapter 909." Id.

[9] The plaintiff ignores the self-regarding consequences of her own argument. If chapter 909 is inapplicable to the present case, the trial court necessarily lacked the authority to grant her motion to vacate the arbitration award under § 52-418.

[10] General Statutes § 52-420 (b) provides: "No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion."

[11] The defendant filed a supplemental memorandum of law in opposition to the motion to vacate and in support of the application to confirm the award on August 7, 2018. In this supplemental memorandum of law, the defendant reiterated his claim that the trial court lacked subject matter jurisdiction to consider the plaintiff's motion to vacate the award and also argued that there was no basis under § 52-418 (a) (4) to vacate the award.

[12] The court and the defendant's counsel discussed responsive briefing at the end of the August 10, 2018 hearing:

"The Court: Okay. So . . . you wanted time to file a supplemental memorandum?

"[The Defendant's Counsel]: Yes, Your Honor. I believe I could file it this afternoon. I just wanted to provide the town of Marlborough case—

"The Court: Sure.

"[The Defendant's Counsel]: —that I cited for you.

"The Court: Yeah. That's fine. So it can be next week, whatever works for you. . . . So, what would be—and what would be the timing that would work for you?

* * *

"The Court: So, shall we just say by next Friday?

"[The Defendant's Counsel]: Yes, Your Honor. I will certainly endeavor to have it sooner."

[13] The defendant argues that a motion to vacate is functionally equivalent to a complaint and, therefore, must state the essential factual allegations necessary to confer jurisdiction. The analogy is inapt. Unlike the fact pleading requirements for complaints in civil actions; see General Statutes § 52-91 ("[t]he first pleading on the part of the plaintiff shall be known as the complaint and shall contain a statement of the facts constituting the cause of action and, on a separate page of the complaint, a demand for the relief, which shall be a statement of the remedy or remedies sought"); § 52-420 does not require a movant to file a "statement of the facts constituting" the basis for the motion. General Statutes § 52-91. We also decline the defendant's invitation to amend § 52-420 by judicial construction to achieve what he argues would be a more efficient, economical, and expeditious procedure for the judicial consideration of arbitration awards.

[14] Indeed, the trial court in the present case took care to ensure that the defendant was not prejudiced by the plaintiff's belated submission. When the defendant raised the issue of the plaintiff's last minute filing, the trial

court offered the defendant a second hearing and an opportunity to file a responsive brief at a "[time] that would work for" him. Footnote 12 of this opinion.

[15] Alternatively, the defendant argues that, "[e]ven if the . . . plaintiff's reference to § 52-418 (a) (4)" in her motion to vacate "was sufficient to give the trial court jurisdiction to consider such grounds for vacatur," the trial court lacked jurisdiction over the plaintiff's claims that the award (1) impermissibly included issues related to child support, and (2) violated the public policy favoring the enforcement of premarital agreements. We are not persuaded. Subdivision (4) of § 52-418 (a) provides that an arbitration award may be vacated "if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." This ground for vacatur clearly includes a claim that the arbitrator exceeded her authority by including in the award issues related to child support in violation of §§ 46b-66 (c) and 52-408. As for the plaintiff's claim based on public policy, there is no need for us to address the jurisdictional issue raised by the defendant because the trial court did not discuss that claim in its order vacating the award and did not rely on that ground in granting the plaintiff's motion to vacate.

[16] In *Garrity* v. *McCaskey*, 223 Conn. 1, 612 A.2d 742 (1992), we explained that, in addition to the statutory grounds set forth in § 52-418, two common-law grounds also exist for vacating an arbitration award: (1) "the award rules on the constitutionality of a statute," and (2) "the award violates clear public policy . . . ." Id., 6.

[17] See *McCaffrey* v. *United Aircraft Corp.*, 147 Conn. 139, 142, 157 A.2d 920 ("[a]ction in the courts to compel compliance with the arbitration provisions of the agreement can be taken only by the parties as determined in the agreement"), cert. denied, 363 U.S. 854, 80 S. Ct. 1636, 4 L. Ed. 2d 1736 (1960); *Colleran* v. *Cassidento*, 27 Conn. App. 386, 394 n.7, 607 A.2d 434 (1992) ("§ 52-418 provides that only a 'party' to an arbitration may make an application to [the] Superior Court to vacate the arbitration award").

[18] Virtually identical language appears in General Statutes § 52-417, which provides in relevant part that, "[a]t any time within one year after an award has been rendered and the parties to the arbitration notified thereof, *any party to the arbitration* may make application to the superior court . . . for an order confirming the award. . . ." (Emphasis added.) It would make no sense, of course, to require that a party must be aggrieved by an arbitration award before moving to confirm the award. We will not construe the very same language used in § 52-418 to require aggrievement in connection with a motion to vacate the award.

[19] On January 8, 2018, the parties entered into a stipulation pendente lite providing that (1) the defendant would pay the plaintiff child support in the amount of $714 per week, and (2) the defendant would pay 73 percent and the plaintiff would pay 27 percent of the children's health expenses not covered by insurance and extracurricular expenses. On August 10, 2018, the parties entered into an additional stipulation pendente lite that essentially reaffirmed the provisions of the January 8, 2018 stipulation and required the defendant to pay all past due support amounts.

[20] General Statutes § 46b-84 (a) provides in relevant part: "Upon or subsequent to the annulment or dissolution of any marriage or the entry of a decree of legal separation or divorce, the parents of a minor child of the marriage, shall maintain the child according to their respective abilities, if the child is in need of maintenance. . . ."

[21] Section 46b-215a-2c (f) (1) (A) of the Regulations of Connecticut State Agencies provides: "An order under this subparagraph shall direct either parent to name the child as a beneficiary of any medical or dental insurance or benefit plan carried by or available to such parent at reasonable cost."

[22] Section 46b-215a-2c (g) (1) of the Regulations of Connecticut State Agencies provides: "Subject to section 46b-215a-5c of the Regulations of Connecticut State Agencies, the noncustodial parent shall be ordered to pay the custodial parent a child care contribution as part of each child support award entered under this section. Such contribution shall be for the purpose of reimbursing the custodial parent for a portion of the child care costs incurred on behalf of the subject child."

[23] It was disputed whether the funds received by the plaintiff from her father were a loan or a gift. The proper characterization does not matter for present purposes.

[24] The plaintiff argued in the trial court that the submission was restricted but invoked, as she does here, the "scope of the submission" and "manifest disregard of the law" grounds to vacate under § 52-418 (a) (4), which apply

to unrestricted submissions. The trial court's order granting the plaintiff's motion to vacate the award did not explicitly address whether the submission was restricted, but, as requested, the trial court invoked § 52-418 (a) (4) in granting the plaintiff's motion to vacate the award.

[25] The arbitration agreement contains a number of perplexing word choices that create difficulty for the plaintiff's argument that the parties intended to require the arbitrator to apply French law to determine how to distribute the property after classifying it as separate or joint property. First, the arbitration agreement provides that the arbitrator will be "guided" by the French Civil Code in certain specified respects. Choice of law provisions typically do not employ such gentle language but, instead, state unequivocally what law will govern or control. Second, the irregular use of the word "effectuate" in the agreement leads to further ambiguity. The plaintiff argues that "effectuating" the premarital agreement means carrying out the substantive provisions of that agreement, an interpretation that would have substantial force if it did not fight against the peculiar phrasing of the arbitration agreement, which provides that the arbitrator "shall be guided by the French Civil Code with regard to any claim by the parties that the [a]rbitrator either *vacate* their premarital agreement or *effectuate* their premarital agreement . . . ." (Emphasis added.) The parallel structure employed by the parties suggests that "effectuate" is intended to mean the opposite of "vacate," i.e., "enforce." This ambiguity leads to a lack of clarity that, in our view, is never removed: Does the arbitrator effectuate the premarital agreement by upholding its validity and applying its terms only to "determine what property is included within the scope of the premarital agreement pursuant to [the] French Civil Code," as the defendant argues, or did the parties intend that the effectuation of the premarital agreement would require the arbitrator to apply French law in all respects when carrying out the substantive provisions of that agreement? This question points to further confusion sowed by the provision in the arbitration agreement stating that the arbitrator shall "determine what property is included within the scope of the premarital agreement pursuant to [the] French Civil Code . . . ." Does this provision mean, as the defendant argues, that the French Civil Code will be used only to determine the proper categorization of property as separate or joint, or does it mean, as the plaintiff argues, that the arbitrator also must apply French law to the *distribution* of all property, whether joint or separate, once a determination is made to effectuate the premarital agreement? The plaintiff's construction ultimately may be the better one, but the lack of clarity makes it virtually impossible to argue that the arbitrator's efforts to untangle this knotty language exceeded the scope of the submission.

[26] The plaintiff also argues that the arbitrator manifestly disregarded the choice of law provision in the arbitration agreement. As we discussed in part III B of this opinion, the choice of law provision in the arbitration agreement was ambiguous and arguably inapplicable to the question of how to distribute joint property. For this reason, the provision was not "[well-defined], explicit, and clearly applicable"; (internal quotation marks omitted) *Norwalk Police Union, Local 1727, Council 15, AFSCME, AFL-CIO* v. *Norwalk*, supra, 324 Conn. 629; and any misapplication of the provision will not constitute a manifest disregard of the law. See *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 103–105 (arbitrator's interpretation of "patent ambiguity" in contract could not establish manifest disregard of law).

[27] Although it is not the case here, a situation could arise in which an arbitrator's interpretation of a contract provision constitutes a manifest disregard of the law. See, e.g., *Westerbeke Corp.* v. *Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 214 (2d Cir. 2002) ("[u]nless [the respondent] can show that the arbitrator manifestly disregarded a clearly applicable and explicit principle of contract construction in reading [the contract], we will not disturb the arbitrator's contractual interpretation"); *Yusuf Ahmed Alghanim & Sons, W.L.L.* v. *Toys "R" Us, Inc.*, 126 F.3d 15, 25 (2d Cir. 1997) ("[w]e will overturn an award [when] the arbitrator merely mak[es] the right noises—noises of contract interpretation—while ignoring the clear meaning of contract terms" (internal quotation marks omitted)), cert. denied, 522 U.S. 1111, 118 S. Ct. 1042, 140 L. Ed. 2d 107 (1998).

[28] We do not suggest that it was the arbitrator's intention to disregard the statutes prohibiting the arbitration of issues related to child support. It appears from the record that the parties actually induced this error, if inadvertently so. The parties initially desired an unallocated award of alimony and child support and, therefore, requested the arbitrator to include child support in an unallocated award in a manner that would not violate §§ 46b-66 (c) and 52-408. To that end, on October 13, 2017, the parties

submitted a stipulation to the court in which they recognized that "§ 46b-66 (c) (2) provides that the arbitrator may not arbitrate child support." The stipulation also provided that the parties had filed financial affidavits and calculated the child support presumptive minimum to be $714 per week paid by the defendant to the plaintiff pursuant to the state's child support guidelines. The stipulation further provided: "The parties agree to this child support minimum and to submit the balance of the issues (except for child support) to the arbitrator to include [in] her issuance of orders regarding the parties' incomes and an unallocated alimony and child support order that shall not be less than the child support minimum pursuant to the child support guidelines referenced herein and in the guidelines attached hereto."

In attempting to explain this unusual stipulation to the trial court, the following colloquy took place:

"[The Plaintiff's Counsel]: This is an agreement that the parties have reached . . . along with [the arbitrator's] help because we cannot, under the statute, arbitrate issues of child support. So, we've reached an agreement in regards to what at least the presumptive minimum of child support is. We're asking the court to accept that. This way, [the arbitrator] doesn't have to get into that area of inquiry.

* * *

"The Court: You know, I don't understand this because you're reserving the right to go back to square one in the first place.

"[The Defendant's Counsel]: We're going—we're moving forward on an unallocated order, Judge. And this allows us to—

"The Court: No, I understand. But you're reserving the right—you understand what I'm saying? . . .

"[The Plaintiff's Counsel]: Our expectation is that [the arbitrator is] going to assist [the] parties in making determinations of income [that] ultimately will be binding on them to be able to plug the income in the child support guideline calculation. . . .

"The Court: Oh, I see. Because she's going to do an unallocated order.

"[The Defendant's Counsel]: Correct.

* * *

"[The Plaintiff's Counsel]: [W]e're trying to eliminate the arbitrator [from having] anything to do with child support. That's why we're providing the stipulation to the court. . . .

"The Court: I'm not going to debate it with you. I don't see any real problem except down the road, maybe. Because it's an unallocated order, so [the arbitrator] is ordering child support.

"[The Plaintiff's Counsel]: Not necessarily, because she's going to take the presumptive minimum that we're asking the court to . . . order right now.

"The Court: That doesn't shield her from—protect her from entering an unallocated order, does it?

"[The Plaintiff's Counsel]: No, but she's going to take this child support order, which we're asking the court to approve and make an order of the court, and apply that into her order. So, she herself is not making any child support determination.

"The Court: Yeah. Oh, so, when she gives the unallocated order of alimony and child support, it's known because of your stipulation here that it's really an alimony order.

"[The Plaintiff's Counsel]: Correct.

* * *

"The Court: Well, for the record, for what it's worth, the court accepts the stipulation pendente lite but makes no indication that it will be supported if it's appealed. . . .

"[The Plaintiff's Counsel]: All we need is . . . an order of the court, Your Honor. That's all we're asking for at this point in time.

"The Court: Fine. So ordered."

[29] The award provided in relevant part: "17. The plaintiff shall pay 27 percent and the defendant shall pay 73 percent of the minor children's health expenses not paid by insurance. Health expenditures shall be broadly construed to include medical, dental, orthodontics, optical and optometric and mental health care. All nonemergency, elective care shall be agreed to in writing in advance. In-network providers shall be used unless the parties agree otherwise.

"18. The plaintiff shall pay 27 percent and the defendant shall pay 73 percent of qualifying child care necessary for the plaintiff's employment.

"19. The minor children's extracurricular expenses that are agreed to in writing by the parties before they are incurred or committed to shall be divided 73 percent to be paid by the defendant and 27 percent to be paid

by the plaintiff.

\* \* \*

"27. The defendant shall maintain $600,000 life insurance for the benefit of the plaintiff to secure his alimony obligation; he may reduce it by one-sixth every year commencing January 1, 2019. The defendant shall maintain $400,000 life insurance for the benefit of the minor children so long as he has a child support obligation; he may reduce it by $40,000 annually commencing January 1, 2019. The children or a trust benefitting the children shall be named the death benefit beneficiary. Inasmuch as no educational support order is issuing at this time, no life insurance is currently required of either party to secure the same. . . ."

————————————————————